## SUPREME COURT.

JOHN GARDNER and others agt. DAN TYLER and others.

In a libel in the United States district court against a vessel, praying that she be sold to satisfy the amount of a *bottomry bond,* and the several claimants filed their claim and answer disputing the validity of the bottomry bond, and thereafter one of the claimants applied for the discharge of the vessel under the provisions of the act of congress, and gave a bond to the marshal as security for that purpose, executed by a third person, and also by one of the defendants by his attorney, and the district court proceeded and made a decree against the vessel for a certain amount, and rendered a summary judgment in *personam* under the statute against the obligors of the bond for the penalty,

*Held,* in an action in the state court against the (defendants) obligors of the bond, upon said decree claiming a certain amount due thereon from these defendants, that upon one of the defendants putting in an answer denying all liability, &c., he was not *estopped* by the decree of the district court from proving that he never executed the bond upon which the vessel was discharged, and never authorized its execution, and therefore the district court *never had jurisdiction* to render a judgment in *personam* against him.

*New York General Term, June,* 1863.

SUTHERLAND, INGRAHAM and CLERKE, *Justices.*

IN December, 1855, the bark " White Squall" put intò Rio Janeiro in distress, having suffered severely in a storm. The expense of refitting amounted to $12,786.10, which sum the master was under the necessity of raising by a bottomry of the vessel at a maritime premium of twenty-five per cent., amounting in the whole to $15,995.12. The bottomry bond contained an additional stipulation that if the amount, with the premium, was not paid within five days after the vessel's arrival in New York, a further premium of ten per cent. on the amount advanced was to be paid.

The bark arrived on February 2, 1856, and on the 14th the plaintiffs filed their libel in the United States district court against the vessel, praying that she be sold to satisfy the amount of the bottomry and premium, with the addition of ten per cent. by reason of non-payment.

On March 19, the defendant Tyler, as the owner of one-

seventh, together with six other part owners, filed their claim and answer, disputing the validity of the bottomry bond, and on the 26th of the same month, Alexander Hitchcock, one of the claimants and an owner of one-seventh, applied for the discharge of the vessel under the provisions of the act of congress, and for that purpose gave a bond in $32,000, executed by John J. Boyd, and purporting also to be signed by the defendant " Dan Tyler, by H. M. Barnard, attorney."

The cause was heard in the district court on January 5, 1857, and a decree made against the vessel for $17,594.63, and a summary judgment under the statute was entered in the same decree against Tyler and Boyd for the sum of $32,000, the penalty of the bond given to the marshal on the delivery up of the vessel.

On June 1, 1859, the plaintiffs commenced a suit against Tyler and Boyd, upon the foregoing decree, in which they stated that $15,146.23 had been paid and recovered on account of the summary judgment entered against the defendants, and claimed judgment for a balance of $19,649.85, besides interest.

.The defendant Boyd entered into terms with the plaintiffs, and on payment of $5,700 was released from all further liability on the bond. The defendant Tyler, by his answer, denied all liability :

*First.*—Because the vessel had been sold under attachment for payment of the bottomry charged on her, in respect of which sale the plaintiffs had recovered a further sum of $10,300, whereby the debt had been extinguished and satisfied.

*Second.*—Because the defendant denied having ever executed any bond as stated in the pleadings ; and

*Third.*—The defendant pleads that the discharge of Boyd operated in law as a discharge of himself as co-obligor.

The action was tried before Mr. Justice CLERKE, without a jury, at a circuit court, on March 6, 1861, on which occa-

sion the counsel for the defendant Tyler, in support of his
answer, offered to prove by the defendant himself that he
had never executed the bond to the marshal on which sum-
mary judgment *in personam* had been rendered by the dis-
trict court, had never athorized Barnard, who was one of
his attorneys in the cause, to execute it in his name—had
never given or signed any power of attorney to Barnard
for such purpose, and in fact had never heard of the exist-
ence of the bond until judgment had been entered upon it
against him in the district court. The learned judge, how-
ever, refused to admit the evidence, and received the
record of the judgment in the district court as conclusive
evidence of the defendant's liability, and thereupon judg-
ment was entered against him for $6,583.52, from which
the defendant appealed.

I. T. WILLIAMS, *for the appellant*, contended that this
evidence was improperly rejected. The district court had
no jurisdiction of the person of the defendant Tyler, other
than in respect to the bond alleged to have been executed
by him. The execution of that bond, therefore, was the
fact upon which the question of jurisdiction wholly de-
pended. The record of the district court was not conclu-
sive evidence of that fact, but its verity might be impeached
and negatived in the same manner as the record of a foreign
judgment. (*Starbuck* agt. *Murray*, 5 *Wend.*, 148.) If Tyler
executed the bond, the district court no doubt had juris-
diction to render the summary judgment; but if he did not
sign the bond, or authorize its execution, the district court
could have no jurisdiction. This fact was not in issue in the
proceedings before the district court, which were confined
wholly to the claim *in rem*, nor was the validity of the
bond to be presumed from the fact that summary judgment
had been rendered by the district court. That judgment
was entered as a matter of course under the statute; it
was a sort of judicial corollary to the decree *in rem* in case
where the vessel had been delivered up under the statute;

but the fact whether or not such a bond had ever been executed, was essential to give effect and execution to the judgment. That fact had never been in issue and had never been tried in the district court.

JER. LAROCQUE, *for the plaintiffs*, supported the judgment, and insisted that the evidence had been rightly excluded at the trial. The record of the district court showed abundant jurisdiction on its face, and the defendant having been heard by his counsel, that decree was conclusive as to the due execution of the bond. The record also showed that the defendant, by his proctors, had presented and filed the bond as a genuine bond, and had received the benefit of it by the delivering up of the vessel, and therefore was estopped from questioning its authenticity.

By the court, SUTHERLAND, Justice. If the defendant Tyler did not execute the bond, nor authorize its execution by Barnard, certainly the United States district court had no jurisdiction to render the decree *in personam* against Tyler, founded on the bond.

The bond purported to have been executed by Barnard as attorney for Tyler, and the court must be presumed to have made the decree *in personam* on the assumption that Barnard had been duly authorized to execute the bond for Tyler; but on the trial of this action, which was an action on the said decree or judgment *in personam*, the defendant Tyler offered to prove that he never executed the bond, and never authorized the execution of the bond by Barnard, which evidence was excluded by the court.

If Tyler did not execute the bond, nor authorize its execution by Barnard, how did the court acquire jurisdiction of the person of Tyler, and a right to render the judgment against him *in personam* on the bond ?

The pleadings in the proceedings in the United States district court related exclusively to the proceeding *in rem* against the vessel. There was no issue or allegation in

the pleadings as to the bond or the execution of the bond. There was no citation or process on the bond. It cannot therefore be said, I think, that the rendering of the judgment on the bond involved or implied an adjudication as to the fact of the execution of the bond.

The form of the record is: "And it being suggested to the court that the said ship was discharged on the bond in pursuance of the act of congress," &c. In giving judgment on the bond the court assumed, and probably had a right to assume, that it had been executed by Tyler as principal and Boyd as surety; but I do not think it can be said that the record shows that the fact of the execution of the bond was adjudicated or passed upon;—no doubt the jurisdiction of the court to render the judgment *in personam* on the bond was to be presumed, (*Chemung Canal Bank* agt. *Judson*, 4 *Seld.*, 254;) but the question is, whether Tyler, in the action on the judgment *in personam* on the bond, had not a right to show affirmatively and collaterally that he never executed the bond, nor authorized its execution by Barnard, and thus show that he never appeared in the action or proceeding *in rem* in the United States district court so as to authorize the judgment *in personam* on the bond against him, and that in fact there never was any subject matter for such personal judgment as to him.

The evidence offered I think tended to show, not an error or irregularity, but a total want of jurisdiction to render the judgment as to Tyler, by showing that as to him there really never was any bond or subject matter for such a judgment.

I think, therefore, the record of the proceedings and judgment in the United States district court did not estop Tyler from showing collaterally and affirmatively, in the action on the judgment in this court, that he never executed the bond, nor authorized its execution by Barnard. (*See Chemung Canal Bank* agt. *Judson*, 4 *Seld.*, *above cited;*

. *Dobson* agt. *Pearce*, 2 *Kern.*, 156 ; *Starbuck* agt. *Murray*, 5 *Wend.*, 148 ; *Noyes* agt. *Britton*, 6 *Barb.*, 613.)

If Tyler was not estopped from giving the evidence by the record of the proceedings and judgment of the United States district court, was he estopped upon the principle that, as one of the co-claimants of five-sevenths of the vessel, he had availed himself of the discharge of the vessel from the custody of the marshal, consequent upon the bond's being approved and presented to the marshal ?

I think we must assume from the case, that the proctors of Tyler and the other claimants of five-sevenths of the vessel first presented the bond to the judge for his appro-·val, and then to the marshal, and thus procured her discharge, and that on her discharge she was delivered up to Tyler and his co-claimants.

It therefore sufficiently appears from the case that Tyler, as one of the claimants and owners, had the benefit of the discharge on the delivery of the bond, approved to the marshal ; and as Tyler must be presumed to have known the law, he must probably be presumed to have known that the vessel had been discharged and delivered to the claimants on the filing of a bond, executed by one or more of the claimants. But there were seven claimants—six besides Tyler—as owners in common of five-sevenths of the vessel. Assume that Tyler, on the discharge and re-delivery of the vessel, is to be charged with knowledge of the fact that a bond for her discharge had been given and filed, yet he may have supposed that such bond had been executed by one or more of his co-claimants.

There is nothing in the case inconsistent with such a supposition on his part. An estoppel implies knowledge. I find nothing in the case to show that Tyler knew that a bond purporting to have been signed by Barnard as his attorney, had been presented and filed until after the judgment or decree in the United States district court.

I do not see, then, upon what principle we can hold that

Tyler was estopped from giving the evidence offered, upon the ground that he had availed himself of the bond as executed and of the discharge of the vessel. If he had been the only claimant, perhaps, under the circumstances, we might have held him estopped.

Without considering any other question in the case, my conclusion is, that the judgment appealed from should be reversed, and a new trial ordered, with costs to abide the event of the action.