THE PEOPLE OF THE STATE OF ILLINOIS, etc.

*v.*

NICHOLAS DIEDRICH, SR.

*Filed at Ottawa May 12, 1892.*

1. CONTEMPT—*violation of injunction—right to complain.* On bill for an injunction to restrain the defendants from manufacturing, selling or advertising a certain patent furnace, a compromise was had, by which the injunction was to be granted, but the agreement gave D. & H. the exclusive right to manufacture, sell, etc., such furnace in this State, and the injunction was entered accordingly. Under the agreement D. & H. continued the business for some years, when D. turned the business over to a new company, of which he was the principal, and continued to manufacture and sell as before, the proof failing to show that the manufacture, selling and advertising of the furnaces by D., under the name of the new company, injured complainants any more than it would if done by D. & H. The complainants sought to have D. punished as for contempt of the order of the court: *Held*, that as the complainants had no right to carry on such business in this State they had no right to complain of D.'s acts.

2. In a proceeding to punish a party for the breach of an injunction, the party complaining must not only show a breach, but he must also show that he has in some way been injured thereby.

3. SAME—*prosecution therefor—whether civil or criminal.* Prosecutions for contempt are of two kinds. When instituted for the purpose of punishing a person for misconduct in the presence of the court, or with respect to its authority or dignity, the proceeding is criminal in its nature; but when for the purpose of affording relief between the parties to a cause in chancery, it is civil,—sometimes called remedial. Though sometimes entitled in the name of the People *ex rel.*, etc., the proceeding may properly be in the names of the parties to the original bill.

4. SAME—*appeal from order fining or discharging defendant.* Where a proceeding for a contempt is for the purpose of relief between the parties to a bill in chancery, an appeal will lie from the order of the court, either in imposing a fine or discharging the defendant.

5. INJUNCTION—*order construed.* In construing an injunction order it is not to be supposed that it was intended to restrain acts which would not be injurious to the rights of the complainant, and much less such as would be beneficial to him, and unless the words are clear it will not be deemed to prohibit them.

6. APPEAL—*reviewing the facts—in chancery cases—violation of injunction.* The finding of the facts in a chancery suit is not conclusive upon this court, but such finding may be reviewed by this court on appeal from the judgment of the Appellate Court. The same rule applies to a petition in a civil suit for a contempt in the violation of an injunction.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

Mr. THOMAS G. KERRICK, and Mr. I. K. BOYESEN, for the appellant.

Mr. JOHN M. HAMILTON, for the appellee.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

To the May term of the circuit court of Cook county, 1882, the Ruttan Manufacturing Company, Horace W. Soper, Clinton P. Soper and Charles B. Rogers filed a bill in chancery, against Nicholas Diedrich, Sr., and Nicholas Diedrich, Jr., and David S. Hayes, (the latter as Diedrich & Hayes,) for an injunction. Subsequently they amended the bill, setting up substantially the same facts as in the original bill and praying the same relief. The bill, in substance, as amended, alleges that Nicholas Diedrich, Sr., in violation of an agreement previously entered into by him, was, in the name of said Diedrich & Hayes, manufacturing and selling the "Ruttan furnace," and thereby infringing upon the rights of the complainants, as owners of the patent right, to the same. The defendants answered jointly, denying the right of the complainants to said patent, and also that they, the defendants, or either of them, had violated any such right, or that the said Nicholas Diedrich, Sr., was manufacturing or selling said furnaces in the name of said Diedrich & Hayes. Subsequently, the complainants, and Nicholas Diedrich, Jr., and David S. Hayes, (as Diedrich & Hayes,) entered into an agreement, in

which it is stated that it is made in compromise of the said suit in chancery, and is "intended as an adjustment of the claims of the respective parties to said litigation, as set forth in the pleadings in said cause, and of all matters in controversy between them." In that agreement it is stipulated that said Nicholas Diedrich, Jr., and David S. Hayes (as Diedrich & Hayes,) should have the exclusive right to said furnace in certain territory in the States of Illinois, Indiana and Michigan, therein described, and that the complainants should not in any way interfere with that right, said Diedrich & Hayes agreeing to neither sell or attempt to sell in any other territory. It was also stipulated in said agreement, that in carrying out said compromise a decree should be entered in said cause in favor of the complainants, and against the defendants, whereby the court should find certain facts in favor of the complainants, as alleged in their bill, and decree as follows, to-wit:

"It is therefore ordered, adjudged and decreed, that the said Nicholas Diedrich, Sr., be and he is hereby perpetually enjoined and restrained from manufacturing, or being interested in the manufacture of, the said tubular masonry furnaces, or furnaces of similar design or pattern, or of parts that will fit the said furnaces, and that the said defendants, and each and every of them, be and they are hereby perpetually enjoined and restrained from using, in any way, on said tubular masonry furnaces, or furnaces of similar design or pattern, or in connection therewith, either alone or in connection with said system of heating and ventilation, the said trade-mark of 'Ruttan,' either alone or in connection with other word or words, and from publishing the said circular 'Exhibit C,' or any similar circular or advertisement or publication, or any cut, picture or drawing, in which they or either or any of them claim a right, or profess to manufacture or sell the said Ruttan furnace, either alone or in connection with said system of heating and ventilation, and from claiming and pretending or asserting, in any place or places, that they, or either or any

of them, have or has a right to, or does, manufacture, sell, furnish or set up the said 'Ruttan tubular masonry furnace,' or any furnace of similar design or pattern, under the name 'Ruttan.'"

Following the stipulation as to said decree was the further agreement: "And it is agreed that when the decree is so entered it shall in no manner bar, preclude or interfere with the said parties of the first part (said Diedrich & Hayes being named in the agreement as parties of the first part) having the full enjoyment and use of the trade-mark, manufacture and sale of said furnaces, and parts thereof, in said pleadings and decree described, and herein referred to, within the territory by this agreement reserved to said party of the first part."

Whether a decree was ever entered as per said stipulation does not appear, but the record does show that an order was made reciting that "said Diedrich & Hayes had settled and adjusted said matters of complaint between them and said complainants," and that said bill, on the motion of the complainants, should stand dismissed as to them, and then, after reciting the finding of certain facts, "ordered, adjudged and decreed that this defendant, Nicholas Diedrich, Sr., be enjoined and restrained from manufacturing, or being interested in the manufacture of, certain tubular masonry furnaces, or parts thereof, and from using in any way said furnaces, or furnaces of similar design or pattern, or from using the trade-mark 'Ruttan,' either alone or in connection with other words, and from using a certain circular in advertising said furnaces," etc.

After the said agreement between the complainants and Diedrich & Hayes, and the entry of said decree, the firm of Diedrich & Hayes continued to manufacture and sell said furnaces at Bloomington, Illinois, until the spring of 1888. The foundry in which the business of manufacturing the furnaces was at all times carried on in Bloomington, was owned by the defendant, and when the firm of Diedrich & Hayes quit busi-

ness, in the spring of 1888, he resumed possession and control of it. He afterwards deeded it to his daughter, Louisa Diedrich. In the month of July, 1889, the "Union Foundry Company" was organized, and said Louisa conveyed said foundry to that company.

On the 14th day of November, 1889, an affidavit was filed, on behalf of the complainants, in said circuit court of Cook county, charging the defendant, Nicholas Diedrich, Sr., with violating said injunction, by manufacturing, advertising, selling and offering for sale said "Ruttan furnaces," and asking that a rule be made on him to show cause why he should not be punished for such violation. He appeared and filed his answer, under oath, denying that he had been guilty of a breach of said injunction, and thereupon moved the court to discharge the rule against him. The case was then referred to the master to take and report the evidence. To his report exceptions were filed by the defendant, which were overruled, and an order entered imposing a fine of $300 upon him, and requiring him to pay the costs of the proceeding. From that order he appealed to the Appellate Court for the First District, where the decree of the circuit court was reversed and the cause remanded, with directions to discharge the rule, and from this last judgment this appeal is prosecuted.

The present appellee, defendant below, has entered his motion to dismiss the appeal on the ground that the proceeding is criminal, and therefore not appealable on behalf of the People. That motion having been reserved to the hearing, must first be passed upon.

Prosecutions for contempt are of two kinds. When instituted for the purpose of punishing a person for misconduct in the presence of the court, or with respect to its authority or dignity, it is criminal in its nature. When put upon foot for the purpose of affording relief between parties to a cause in chancery it is civil—sometimes called remedial. Numerous authorities could be cited in support of this distinction, but

the decisions of this court leave no doubt on the subject. (*Crook et al.* v. *The People,* 16 Ill. 534; *Buck* v. *Buck,* 60 id. 105; *Leopold* v. *The People,* 140 id. 552.) In the *Crook case* it was held, that when the proceeding is to secure and enforce a civil remedy, it is for the benefit of the party complaining. New York cases are cited in support of the proposition, notwithstanding there, by statute, the prosecution is to enforce and make satisfaction for the injury done by the breach. It is also shown in that case, as well as in *Buck* v. *Buck, supra,* and the authorities cited, that the contempt proceeding partakes of the original cause, and is according to the forms of practice in chancery. Is is, to all intents and purposes, between the party insisting upon obedience to the injunction and the one charged with its violation. Though sometimes entitled in the name of the People *ex rel.,* etc., it may properly be in the names of the parties to the original bill. (*The People ex rel.* v. *Craft,* 7 Paige, 324.) The right to appeal is in either party, as in other cases in chancery. The motion to dismiss this appeal will accordingly be overruled.

What has here been said will also dispose of the contention of appellee that the judgment of the Appellate Court is final as to the facts of the case, and therefore conclusive against the appellants. Being in chancery, the facts are reviewable in this court.

Looking, then, to the merits of the case as shown by the facts in the record, did the appellants make such a case in the court below as entitled them to the judgment rendered? There is no dispute as to the fact that after the organization of the Union Furnace Company, and the conveyance of said foundry property to it by Louisa Diedrich, said company did, at said foundry, manufacture, advertise and sell, and offer for sale, said Ruttan furnaces. The theory of the appellants is that the organization of that company was but a cover evading said injunction on the part of Nicholas Diedrich, S and that it was he who in fact manufactured and sold s

furnaces,—in other words, that the "Union Foundry Company" was, in point of fact, none other than Nicholas Diedrich, Sr., himself.  For the purposes of this decision that may be conceded.

There is no proof whatever tending to show, nor is it claimed, that the foundry company, through Nicholas Diedrich, Sr., or any one else, did any of the acts complained of in territory other than that in which, by the agreement of complainants and the firm of Diedrich & Hayes, the latter had the exclusive right to manufacture and sell said furnace, and in which complainants were to have no rights whatever.  No attempt was made to show that by any event or arrangement occurring since that agreement, complainants had obtained the right to that territory, or any part of it.  There was no proof, nor is it even claimed, that by the acts of said company the reputation of said furnace, in territory belonging to complainants, had been injured.  Keeping in view the fact that this is a chancery proceeding for the benefit of the complainants in the injunction bill, the question at once arises, in what way have they been injured, even if all has been done that they allege?  If this was a contempt proceeding, for the purpose of vindicating the power and dignity of the court, that question would be unimportant.  Here it is of controlling influence.  It would be both unreasonable and unjust to permit the complainants, in the bill for the injunction, to resort to this summary proceeding merely to settle a question in which they have no substantial interest, and can have no other effect than to harass and annoy the defendant, and it was therefore incumbent upon them, before asking the court to convict and punish him, to show not merely a breach of the injunction, but also that they had in some way been injured thereby.  Thus, it is said in High on Injunctions, sec. 856 : "It has been laid down as a general rule, subject, however, to some exceptions, that the offense complained of as a violation must be injurious to the rights of the complainant in the action."  In *Wilkinson*

v. *National Fire Ins. Co.* 72 N. Y. 499: "In construing an injunction order it is not to be supposed that it was intended to restrain acts which would not be injurious to the rights of the complainant, and much less which would be beneficial to him, and unless the words are clear it will not be deemed to prohibit them." (See, also, *Parker* v. *Wakeman,* 10 Paige, 485; *Hudson* v. *Pletts,* 11 id. 180.) "To do a wholly ineffectual act, though forbidden by an injunction, would hardly be deemed a violation of it. Hence the act must be not only in defiance of the restraint, but must deprive the other party of some substantial right or affect some substantial interest." *Butler, Admx.* v. *Niles et al.* 7 Robt. 336; 16 Abb. Pr. 17; High on Injunctions, sec. 1420.

In citing the foregoing New York case we do not overlook the statute of that State giving a party injured by the breach of an injunction this remedy to recover satisfaction for damages; but, as above shown, it is because the proceeding is for the relief of parties, and not merely to punish a party for the contempt, that it is treated as in chancery, and subject to the rules of practice in causes in equity. Therefore the New York cases are in point here. Treating the proceeding as remedial, the rule is eminently just, and is peculiarly applicable to this case in view of the fact, that although the decree for the injunction is absolute against this defendant, it ought to be considered in the light of the agreement between complainants and Diedrich & Hayes, which was expressly made in compromise of the injunction proceeding, "and intended as an adjustment of the claims of the parties to that litigation, as set forth in the pleadings in said cause, and of all matters in controversy between them."

Something is said in the argument as to complainants' right to have a person of the defendant's methods restrained from selling or advertising said furnaces, and that presumably his doing so after the injunction would be injurious to the rights of complainants, they being the owners of the general right to

the patent. We are unable to discover anything in the entire evidence in the case to warrant the assumption that the manufacture and sale, or the advertising and offering for sale, of the furnaces by the defendant would be more injurious to the complainants than would have been the continued manufacture and sale of them by the firm of Diedrich & Hayes.

We agree with the conclusion of the Appellate Court that there is here no sufficient proof of interest in and injury to the complainants to justify the judgment of the circuit court. The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*