## In the Matter of the Estate of Charles T. Yerkes, Deceased.

## Louis S. Owsley, Executor, Plaintiff in Error, v. Central Trust Company, of Illinois, Defendant in Error.
### Gen. No. 19,528.

1. CONTEMPT, § 18*—*when custodian not liable for delivery of bond coupons to debtor without authority from court.* Where a trust company was appointed by the Probate Court as custodian of certain bonds and securities belonging to an estate, and the order of the court provided that the bonds and securities deposited with the company should not be withdrawn from its custody except by an order of the court, *held* that the company could not be fined for contempt of court because it did not obtain authority from the court to deliver bond coupons to the debtor when it received interest on the bonds, where it appeared that the executor of the estate and the company construed the order as not requiring any authority for delivery of a paid security and that there had previously been numerous like deliveries without an order of the court and with the consent and acquiescence of the parties.

2. CONTEMPT, § 74*—*when appeal lies to the Circuit Court.* An appeal from an order of the Probate Court adjudging a custodian of bonds and securities of an estate guilty of contempt, imposing a fine and directing an execution to issue therefor in favor of the executor if not paid within a certain time, properly lies to the Circuit Court.

GRIDLEY, J., not being a member of this court when this case was decided, took no part in its consideration.

Error to the Circuit Court of Cook County; the Hon. H. STERLING POMEROY, J., presiding. Heard in the Branch Appellate Court at the October term, 1913. Affirmed. Opinion filed October 6, 1914.

MILLER, STARR, PACKARD & PECKHAM, for plaintiff in error; W. ORISON UNDERWOOD and MERRITT STARR, of counsel.

PAM & HURD and JOHN BARTON PAYNE, for defendant in error.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Mr. Justice Smith delivered the opinion of the court.

This writ of error is prosecuted to reverse the decree of the Circuit Court, finding the issues for the respondent and dismissing the petition of Louis S. Owsley, as executor of the estate of Charles T. Yerkes, deceased, for contempt against the respondent, Central Trust Company of Illinois.

The case was pending in the Circuit Court on appeal from an order entered on the petition and answer thereto, in the Probate Court of Cook county, fining the Trust Company for contempt in the amount of $200, and directing that sum to be paid to Louis S. Owsley, as executor, and ordering an execution to issue therefor in favor of Owsley, executor, against the Trust Company if the fine was not paid within ten days.

From the petition, answer and evidence in the record, it appears that the Central Trust Company of Illinois was, by order of the Probate Court of Cook county, Illinois, appointed custodian of certain securities and funds of the estate of Charles T. Yerkes, deceased. The order of appointment is as follows:

"It is ordered that Louis S. Owsley, to whom letters testamentary have this day been issued under the last will and testament of Charles T. Yerkes, deceased, be and is hereby directed to deposit in the Central Trust Company of Illinois, all stocks, bonds and other securities coming into his possession as such executor; also all cash that may come into his possession as executor as aforesaid.

It is further ordered that no such bonds, stocks or securities so deposited with the Central Trust Company of Illinois shall be drawn therefrom except by an order of this court and that no such cash so to be deposited shall be drawn from said Central Trust Company of Illinois except upon the order of this court or upon vouchers to be approved by said Central Trust Company of Illinois."

The Trust Company had in its possession under this order $400,000 par value of bonds of the Inter Ocean

Newspaper Company, secured by a mortgage in which the Trust Company was trustee, together with the coupons for interest thereon. The coupons, which matured on these bonds on July 1, 1909, were in the possession of the Trust Company; and, pursuant to verbal instructions from Louis S. Owsley, executor of the estate, the Trust Company presented these coupons, on July 1, 1910, and collected from the Inter Ocean Newspaper Company the amount due thereon, $10,000, and delivered up the coupons and credited the executor's account with the payment, and no order of the Probate Court was entered authorizing the delivery of the coupons.

On March 27, 1911, the Trust Company, upon the request of the executor, presented for payment three sets of coupons (which are the coupons involved in this controversy) to the Inter Ocean Company for payment, and payment was refused. No order of the Probate Court authorizing such presentation was ever entered. On November 25, 1911, the executor made a demand upon the Trust Company, as trustee under the mortgage securing the bonds to which these coupons appertained, to declare the principal of the bonds due. This was regarded by Dawes, president of the Trust Company, as a violation of the agreement then existing between the executor, Hinman and the Inter Ocean Company, and of the order of the Probate Court entered with respect to such agreement; but he stated that he would perform his duty in the premises, whatever it might be, stating, however, that he proposed to take advice as to just what that duty was. He thereupon notified Hinman, president of the Inter Ocean Company, of the demand. Three days later, on November 28, 1911, the Inter Ocean Company tendered payment to the Trust Company of these coupons, which it accepted and delivered to the Inter Ocean Company the coupons in question.

The situation existing at this time was that George W. Hinman, president of the Inter Ocean Company, who already owned most of its stock, and had sold to the public $200,000 par value of its bonds, a part of the above mentioned issue, had made an offer to purchase the bonds held by the executor and deposited with the Trust Company under an agreement for that purpose, $20,000 in cash. The executor had reported the offer to the Probate Court, which, on November 25, 1911, entered an order directing the sale of the bonds to Hinman in accordance with his offer unless by a day fixed the executor should receive a better bid, and further directing the executor to advertise for bids, which were to be returned into open court on the day so fixed. Immediately after the entry of this order, demand was made by Owsley on the Central Trust Company, as trustee, to declare the principal of the bonds due.

The executor, contending that the action of the Trust Company in delivering up the coupons was in violation of the order appointing it as custodian, above quoted, filed a petition seeking to have it punished for contempt of court. To this petition the Central Trust Company filed an answer. The Probate Court entered an order December 30, 1911, which required the custodian to deliver up the coupons on January 8, 1912. This order was treated by all parties, in effect, as a rule to show cause, and the Trust Company filed its answer on January 8, 1912, setting up the circumstances under which it delivered the coupons, and contending that no order was required for delivery of a paid obligation, and that in the past numerous like deliveries had been made without any order of court, and with the consent and acquiescence of the executor. The Probate Court thereupon entered the above order, finding the Central Trust Company guilty of contempt. The order was based upon the original petition for contempt and the answer thereto, and also recited the order of December 30, 1911, and the answer to such

order. From that order an appeal was prayed to the Circuit Court and the case was there tried *de novo*.

It appeared on the trial in the Circuit Court that a large number of coupons and similar obligations had been collected by the Trust Company from time to time, and the coupons surrendered without any order of the Probate Court in the premises, and it was admitted on the hearing that in each instance the executor, Owsley, had directed the Trust Company to collect the coupons and deliver the same when paid. It also appeared that the Trust Company, at the request of the executor, had sold $100,000 par value of bonds held by the Trust Company as custodian; that no order of the Probate Court was ever entered authorizing such sale or the delivery of the bonds sold, and that such action had been reported to the Probate Court more than two years before and no action had ever been taken by the Probate Court in anyway objecting thereto.

While the amount of collections made by the estate appear to have been large, most of the assets were held as collateral security to obligations of the estate, and, of course, were not in possession of the custodian. The executor admitted that he could not recall a single case where an obligation was paid any order of court was ever procured for the delivery of the paid obligation.

It further appears that the executor had filed a complete statement of his receipts and expenditures from April 30, 1910, down to and including November 2, 1910, and that he had previously filed accounts covering receipts and expenditures prior to that time. These accounts showed the various items which were collected and delivered without any order of court, including the $10,000 collected July 1, 1910, on the Inter Ocean Company coupons. There is no evidence in the record tending to show that the slightest objection was ever made by the court or the executor to delivery of

these coupons without an order of the Probate Court. Prior to the trial of the case in the Circuit Court, the executor made a motion to dismiss the appeal upon the ground that the matter could not be reviewed by appeal in the Circuit Court on a trial *de novo*, but that the case should have been taken by a writ of error to the Appellate Court, or to the Supreme Court of the State. We hold that, under the statute on this subject, the appeal was properly taken to the Circuit Court and the court did not err in denying the motion to dismiss the appeal. The statute (paragraph 3269, Jones & Addington's Statutes) is as follows:

"Appeals may be taken from the final orders, judgments and decrees of the probate courts to the circuit courts of their respective counties in all matters except in proceedings on the application of executors, administrators, guardians and conservators for the sale of real estate, upon the appellant giving bond and security in such amount and upon such condition as the court shall approve, and upon such appeal the case shall be tried *de novo*."

This statute gives the right of appeal in all matters other than the specifically excepted cases, and it must be conceded that the present case is not one of the excepted cases. See also *Randolph v. People*, 130 Ill. 533. The order here was, as in the *Randolph* case, an order to pay a specific sum of money within ten days, in default whereof execution should issue. An appeal was taken in that case to the Circuit Court which dismissed the appeal upon the ground that it did not lie in such a case. The Supreme Court held this was error; that the appeal was properly taken to the Circuit Court. The distinction between civil and criminal contempt in this State is elaborately discussed in *People v. Diedrich*, 141 Ill. 665; *O'Brien v. People*, 216 Ill. 354; *Franklin Union No. 4 v. People*, 220 Ill. 355; *Flannery v. People*, 225 Ill. 62; *Hake v. People*, 230 Ill. 174. Under the rulings in those cases, the pro-

ceeding in the case under review was a civil contempt, and it seems to be clear from the above cited authorities that the course of procedure, both in the lower courts and in all reviewing courts, is in accordance with that pursued in any other civil proceeding, and the appeal was properly taken to the Circuit Court. The trial in the Circuit Court is, by statute, a trial *de novo*. The Circuit Court does not sit in review of the Probate Court. The record shows, we think, that the executor and the custodian at all times construed the order appointing the custodian as not requiring any authority from the court to receive payment of a security and to deliver the security paid. The court adopted the same construction for the various payments so made and reported to the court in the executor's accounts and the court, at no time, dissented therefrom. Moreover, in the only case in which the attention of the court was called to the fact that securities were delivered without an order of the court, which was a sale and not a payment, no action whatever was taken by the court either against the executor or the custodian. Parties and courts are bound by the construction which they place upon their orders, and after the party complained of has acted in reliance upon that construction, they cannot, at least in a summary contempt proceeding, repudiate such construction. We think the order should not be construed as preventing acts which would not injure the estate but would benefit it. The coupons were delivered by the custodian in accepting payment thereof, which the debtor had a right to make. The coupons being in the possession of the respondent and the respondent having demanded payment thereof, the debtor, for his own protection, had the right to pay them. He had, at the same time, the corresponding right to demand the coupons when they were paid. The executor having placed the construction on the order, which the record shows he did, and the parties having acted upon such

construction, the executor should not now be heard to contend that there is a different construction and invoke the extraordinary remedy of contempt proceedings against the custodian.

The trial court held, and we think correctly, that the order appointing the custodian was modified by a tacit agreement between the executor and the custodian, particularly in this case where the coupons were delivered to the debtor on the payment thereof by it in the ordinary course of business in handling such obligations, and where no loss or injury resulted to the estate. The practice pursued in numerous other cases by the executor and the custodian indicates clearly that although there was no written agreement on the subject, there was a tacit agreement between the executor and the custodian that no order of court need be required to deliver an obligation when it was paid. The executor seeks to have the custodian punished, not for the violation of a court decree, but for the violation of a decree as modified by what was virtually a private agreement between himself and the custodian.

In *Encyclopaedia Britannica Co. v. Werner Co.,* 172 Fed. 1012, an injunction was issued, but there were agreements entered into between the parties materially modifying the provisions of the injunction, and the Britannica Company, as the court held, virtually asked the court to punish the Werner Company and its officers, not for their disobedience of the decree as it was pronounced by the court, but for their failure to observe the decree in the manner privately agreed on by the parties to the suit, and held that the jurisdiction to impose a fine on a violator of a decree of injunction should not be exercised in such a case. See also *Holbrook v. Ford,* 153 Ill. 633.

As to the right of the Inter Ocean Company to pay or tender payment of the disputed coupons after demand made by the trustee, we entertain no doubt. In *Central Trust Co. of Illinois v. Owsley,* No. 19,527,

*ante,* p. 505, we have held, on the same state of facts, in our opinion filed at this term, that the Inter Ocean Company had the right to tender payment and to pay the coupons to the Trust Company. We will not enter into a discussion of that question further than to say that when the coupons were first presented for payment, the executor clearly constituted the Trust Company his agent to receive payment. It was also the agent which received payment of the next preceding set of coupons. The executor was not in the State on November 28, 1911, and the Inter Ocean Company naturally assumed, and had a right to assume, that the Trust Company, which had the actual possession of the coupons, was the agent of the executor for the purpose of receiving payment of such coupons; and the Trust Company naturally, under the circumstances, assumed that it had authority to receive the money and deliver the coupons upon which it had demanded payment at the request of the executor and on his behalf. If the payment made to the Trust Company was an authorized payment, it is clear the delivery of the coupons was a wholly innocuous act, for, being paid, the papers were valueless, except as evidence of payment. If the payment of the money to the trustee was not a payment of the coupons, it was in equity a good tender, and until withdrawn it remained a good tender, thus cutting off any power or right of proceedings on the part of the executor or trustee based on the maturity of the coupons and nonpayment thereof. Whatever wrong was done and whatever injury was caused, it was not done or caused by the delivery of the coupons (which is the only thing claimed to be contemptuous), but by the receipt of payment and the refusal to mature the .principal of the bonds, neither of which could under any circumstances constitute contempt.

The decree of the Circuit Court is affirmed.

*Affirmed.*

MR. JUSTICE GRIDLEY, not being a member of this court when this case was decided, took no part in its consideration.