IDEAL MANUFACTURING CO. *v.* LUDWIG.

INJUNCTION—VIOLATION—STRIKE—INTIMIDATION — WHAT CONSTITUTES.

> An injunction restraining the officers and members of a trade union from intimidating the employés of complainant, against whom a strike is in progress, is violated by the president of the union saying to a workman being escorted through a crowd of strikers by an officer, "I see you are still doing your dirty work."[1]

Certiorari to Wayne; Brooke and Mandell, JJ. Submitted June 13, 1907. (Docket No. 127.) Decided July 1, 1907.

Bill by the Ideal Manufacturing Company against Martin Ludwig and others to enjoin an interference with complainant's business: On petition, Martin Ludwig was adjudged guilty of contempt in violating the temporary injunction, and sentenced to imprisonment for ten days in the county jail. Affirmed.

The respondent was found guilty of contempt of court in violating the injunction which the court had issued in the case of the *Ideal Manufacturing Company* v. *Martin Ludwig and others.* The injunction restrained the respondent and others from:

"1. In any manner unlawfully interfering with the employés of the Ideal Manufacturing Company, complainant herein, now in the employ of complainant, and from in any unlawful manner interfering with any person who may desire to enter the employ of the Ideal Manufacturing Company, by the use of threats, intimidation, personal violence, or other unlawful means calculated or intended to deter or prevent such person or per-

---

[1] As to the law relative to picketing, see note to *Jensen* v. *Cooks' & Waiters' Union* (Wash.), 4 L. R. A. (N. S.) 302.

sons from entering or continuing in the employment of the Ideal Manufacturing Company, or calculated or intended to induce any such person or persons into leaving the employ of the said Ideal Manufacturing Company.

" 2. From congregating, gathering, assembling, lingering, or loitering about or in the neighborhood of the premises upon which the Ideal Manufacturing Company is engaged in carrying on its business, or at other places, with intent to unlawfully interfere with the employés of the said Ideal Manufacturing Company, or with the prosecution of their work, or to unlawfully interfere with or intimidate or threaten the employés of the Ideal Manufacturing Company, with intent to cause them to leave the employment of said company, or to interfere with or obstruct in any unlawful manner, the business and trade of said Ideal Manufacturing Company.

" 3. From interfering with the free access of the employés of the said Ideal Manufacturing Company to the premises on which the company is engaged in carrying on and conducting its business in their places of work, and likewise from interfering with the free return of the said employés to their homes or places of business.

" 4. From giving any directions or orders, through associations, committees, or otherwise, for the performance of any such unlawful acts or threats or acts of intimidation hereinbefore enjoined, and from in any unlawful manner, whatever, impeding, obstructing, or interfering with the regular operation and conduct of the business of said Ideal Manufacturing Company.

" 5. From interfering, intimidating, boycotting by the distribution of circulars or otherwise, or otherwise molesting or threatening in any manner the employés or patrons of the said Ideal Manufacturing Company, or any other person or persons, for the purpose, by means of such interference, intimidation, threats, or boycotting, of inducing such person or persons not to do business or deal with or transact business with said Ideal Manufacturing Company.

"6. From the performance of any acts, threats, or acts of intimidation hereinbefore enjoined, and from obstructing or interfering, by boycotting or otherwise, or by any acts of intimidation or coercion, with the regular conduct and operation of the business of the said Ideal Manufacturing Company, and from preventing, by these means, said company from carrying on its business, until the further order of this court."

*George F. Monaghan* and *Peter J. Monaghan,* for complainant.

*Dohany & Dohany,* for respondents.

GRANT, J. (*after stating the facts*). The facts in this case are very similar to those in *Beck* v. *Protective Union,* 118 Mich. 497 (42 L. R. A. 407).

The complainant is carrying on a large manufacturing establishment, employing from 300 to 350 men. Among its workmen are those known as "metal polishers." There is a union known as "Metal Polishers' Union No. 1," of which respondent Ludwig was president. This union demanded of their employer that it discharge a workman because he did not belong to the labor union. In other words, complainant claimed the right to employ its workmen without dictation from any union or other association. The labor unions claimed the right to dictate whom the complainant should employ. Complainant refused to comply with the demand, and a strike was ordered by the unions. Pickets were established in the streets around the complainant's manufactory, crowds of union men, to the number sometimes of 300, gathered in the streets, particularly at morning, noon, and night, to intercept and intimidate the complainant's employés, and threats of boycott, etc., were made. To such an extent was this unlawful interference carried on by the union men that 20 policemen were required to protect complainant's employés in going to and from their work. Complainant filed a petition against Ludwig and others, charging contempt of court. They were duly served with the petition and affidavits accompanying it, and with an order to show cause. They appeared, proofs were taken, and the respondent found guilty.

Ludwig and other members of the Metal Polishers' Union followed an employé of the complainant as he was being escorted by a policeman through a crowd. Ludwig walked in front of this employé, and said to him, "I see you are still doing your dirty work." When the officer

asked him who he meant, he pointed to the employé, and said, "I mean that." Further statement of the facts is unimportant. It is manifest that the attitude of the crowd, composed of union men, was hostile, threatening, and intended to intimidate. The claim of Ludwig and his associates that they were *seeking only persuasion* is the baldest subterfuge. The circuit judges of the court below who heard the testimony very properly said:

"It was a perversion of terms to claim, or to believe, that to approach a man surrounded by an unfriendly and menacing crowd and ask him to do or to refrain from doing something is lawful or peaceable persuasion, or is other than an act of intimidation as is specifically and in terms enjoined in this cause. No proofs are necessary to establish the fact that the natural and intended result of such conduct would be intimidation. * * *·

"His whole conduct, as sworn to by himself, constitutes, in our opinion, a deliberate disregard of the terms of the injunction with which he had been served prior to the time in question. It is, in our opinion, idle for the respondent to say that his purpose in joining the crowd surrounding Bert Brown was to peaceably solicit Brown's membership in the union. Neither the time nor the circumstances were such as would make such an appeal possible. The claim of the respondent in this respect is, in our opinion, a mere colorable pretext to justify his conduct."

The language we used in *Beck* v. *Protective Union*, supra, is applicable here:

"The law abhors subterfuges, it lays aside the covering, and looks to the actual facts beneath. In the language of Chief Justice Shaw:

"'The law is not to be hoodwinked by colorable pretenses. It looks at truth and reality, through whatever disguise it may assume.' *Com.* v. *Hunt*, 4 Metc. (Mass.) 111, 129.

"Threats in language are not the only threats recognized by the law. Covert and unspoken threats may be just as effective as spoken threats. * * *

"To picket complainant's premises in order to intercept their teamsters or persons going there to trade is unlawful. It itself is an act of intimidation, and an unwarrantable interference with the right of free trade. The highways

and public streets must be free to all for the purposes of trade, commerce, and labor. The law protects the buyer, the seller, the merchant, the manufacturer, and the laborer in the right to walk the streets unmolested. It is no respecter of persons; and it makes no difference, in effect, whether the picketing is done 10 or 1,000 feet away.

" It will not do to say that these pickets are thrown out for the purpose of peaceable argument and persuasion. They are intended to intimidate and coerce. As applied to cases of this character, the lexicographers thus define the word 'picket:' 'A body of men belonging to a trades union sent to watch and annoy men working in a shop not belonging to the union, or against which a strike is in progress.' Cent. Dict.; Webst. Dict. The word originally had no such meaning. This definition is the result of what has been done under it, and the common application that has been made of it."

The court sentenced the respondent Ludwig to serve a period of 10 days in the Wayne county jail. The evidence fully justified the finding of the circuit judges.

The judgment is affirmed.

MCALVAY, C. J., and CARPENTER, BLAIR, and MOORE, JJ., concurred.