206     APPELLATE COURTS OF ILLINOIS.

Nusbaum v. Retail Clerks' Int. Protective Assn., 227 Ill. App. 206.

## J. N. Nusbaum et al., Appellees, v. Retail Clerks' International Protective Association et al., on appeal of Stephen J. Pannert et al., Appellants.

### Gen. No. 27,738.

1. CONTEMPT—*violation of injunction against "open shop."* Contempt by violation of an injunction restraining a labor union and certain members thereof from picketing, boycotting and otherwise interfering with complainant's business is shown by evidence that one of the individual defendants patrolled the sidewalk in front of complainant's store carrying a banner with an inscription calling attention to the injunction and purporting to request all union men to abide by it, that such defendant on another occasion distributed handbills in the vicinity of the store characterizing it as a "scab" store and appealing to union labor to boycott such store and that another defendant drove past this store on several occasions in an automobile on which was displayed a banner advising union men to abide by the injunction, where it is admitted that they were so worded as to prevent friends of union labor from patronizing the store, that they were displayed for that purpose and that the two defendants in question were acting under the orders of a third defendant.

2. CONTEMPT—*colorable compliance with injunction against boycott as violation thereof.* It is no defense, in a proceeding to punish violation of an injunction against picketing and boycotting a nonunion store, that the act of defendants in patrolling the streets adjacent to such store, displaying banners calling attention to the injunction and requesting friends of organized labor to abide thereby, was done in performance of the defendants' duty to prevent a violation of the injunction, where the banners in question were of such character as to attract attention of persons in the vicinity of complainants' store to such store and falsely to lead them to believe that a labor controversy existed between the proprietors of such store and their employees and to work a boycott generally of such store.

3. CONTEMPT—*injury from violation of injunction against boycott.* Injury is sufficiently shown from defendants' violation of an injunction against picketing and boycotting complainants' store to support an order fining members of a labor union for contempt, where the evidence shows that during the continuance of the acts complained of there was almost a complete cessation of patronage of complainants' store.

4. CONTEMPT—*necessity for showing injury from violation of injunction as basis for punishment for contempt.* In a proceeding to punish members of a labor union for contempt of court, consisting in their violation of an injunction against picketing and boycotting complainants' store, the question of injury is not properly before the court, such proceeding being a collateral one, and injury will be inferred.

5. CONTEMPT—*when evidence of other similar offenses is admissible.* In a proceeding to punish violation of an injunction against picketing and boycotting by members of a labor union, evidence that one of the defendants was active during a strike against another employer is admissible as tending to show the intention of such defendant.

6. MASTER AND SERVANT—*liability of third person for interference with relationship.* The right of employees to form unions and extend the membership thereof does not include the right to picket and boycott a nonunion store for the purpose of causing a strike of the employees of such store or to compel unionization of such store by working great financial loss thereto.

Appeal by defendants from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1922. Affirmed. Opinion filed December 5, 1922. *Certiorari* denied by Supreme Court (making opinion final).

DARROW, SISSMAN, HOLLY & CARLIN, for appellants.

DUDLEY TAYLOR, for appellees.

MR. JUSTICE MORRILL delivered the opinion of the court.

This is an appeal from a decree of the superior court of Cook county imposing a fine upon appellants for violating an injunction order issued by that court September 8, 1921. To determine whether or not there was a violation of the injunction, it is necessary and proper to refer to the bill of complaint as a whole, the answers thereto, the injunction order in question and the evidence in the case. *Illinois Malleable Iron Co. v. Michalek*, 279 Ill. 221.

The bill of complaint alleged that the complainants,

208     APPELLATE COURTS OF ILLINOIS.

Nusbaum v. Retail Clerks' Int. Protective Assn., 227 Ill. App. 206.

as copartners, are doing business under the name of
Continental Clothing House. The defendants are the
Retail Clerks' International Protective Association,
Local Number 195, Leon Batowsky (alias Leon
Green), Stephen Pannert and Louis Szymonek. It
charged that said association is a labor union com-
posed of clerks of certain stores in Chicago and or-
ganizers and representatives of the union; that said
individual defendants have been attempting to influ-
ence salesmen employed by complainants to become
members of the union and to unionize complainants'
store, and have been engaged in picketing and boy-
cotting it; that the defendant Pannert was at one time
an organizer for the I. W. W. engaged in many strikes
in Seattle, subsequent to which he became affiliated
with the Chicago Federation of Labor as a labor
union agitator and organizer and attempted to union-
ize various stores in Chicago, in the course of which
attempts he assailed their employees and destroyed
the property of the employers; that complainants are
engaged in the business of selling at retail clothing,
hats and furnishing goods and have a store located at
Milwaukee and Ashland avenues, consisting of several
buildings; that complainants employ in their business,
exclusive of office help, about one hundred persons, in-
cluding fifty salesmen, forty tailors and ten miscel-
laneous employees; that the vicinity in which the store
of complainants is situated is generally recognized as
the largest retail business center of Chicago outside
of the loop district; that complainants have operated
their sales department upon the open shop basis; that
defendants have conspired with other persons, whose
names are unknown, to compel salesmen employed by
complainants to join the union and to compel com-
plainants to employ only union employees, and in fur-
therance of such conspiracy have caused complainants'
store to be picketed and the business of complain-
ants to be boycotted for the purpose of injuring said

business and complainants; that it is the purpose of defendants and those confederating with them to continue these acts until complainants yield to defendants' demand. The bill sets forth sundry specific instances of picketing and boycotting and the display of signs and placards indicating that complainants are unfair to organized labor and notices of a strike against the Continental Clothing House; that many pedestrians stopped and observed the pickets and read the signs; that there is no strike on the part of the salesmen employed by complainants and that defendants are seeking to compel persons not to patronize complainants to the end that complainants may be compelled to employ only such salesmen as are members of said union. The bill then recites the procedure which has been followed in the City of Chicago in numerous other strikes and boycotts, including the practice on the part of such pickets of standing, loitering and patrolling, maintaining close watch and espionage, following, threatening, intimidating, assaulting and beating employees, the offering of money inducements, calling persons scabs and vile names and subjecting employees and patrons to criticism, censure, hatred, scorn, humiliation, disgrace and annoyance. These practices are set forth at length in apt language, which we do not deem it necessary to repeat in detail. The bill prayed for a temporary injunction restraining defendants from picketing or maintaining any pickets at or near complainants' premises or from patrolling or congregating in front of or in the vicinity of the place of business of complainants, from exhibiting or distributing printed or other matter in the vicinity of complainants' place of business, designating or characterizing complainants as unfair to organized labor or designed to induce or influence persons not to deal with complainants, from soliciting, inducing or attempting to induce or influence persons not to enter or continue in the employ-

ment of complainants or not to patronize or deal with them; from assaulting, menacing, intimidating or harrassing persons employed by complainants or from organizing, maintaining or engaging in, or attempting to organize or maintain any boycott against complainants, and for general relief. The temporary injunction granted September 8, 1921, was substantially in conformity with the prayer of the bill as above set forth.

On November 26, 1921, a rule was entered requiring the respondents Green, Goldstein, Pannert and Vent to show cause why they should not be punished for contempt of court for violating the injunction. The various respondents filed their answers to this rule, in which they substantially admitted some of the acts of which complaint was made, but denied any intention on their part of violating the injunctional order of the court.

Thereafter on that date the court entered the order, from which this appeal has been taken, in which is recited the filing of the bill of complaint, the issuance of the preliminary injunction, the rule to show cause, the affidavits filed in support of the petition for the rule and the respective answers of the respondents thereto. The court found that the respondent Vent participated in the violation of the order to some extent but that he has since left Cook county, Illinois, and is engaged in farming operations. In consideration whereof it was ordered that the rule to show cause be discharged as to him.

The court further found that on September 10, 1921, the respondent Goldstein patrolled the sidewalk in front of the Continental Clothing House, carrying a banner on which there was an inscription calling attention to the injunction and purporting to request all union men to abide by the same. The placard is described in detail, from which it appears that it was of a character to attract the attention of persons pass-

ing the store. The order further recites that on September 9, 1921, the respondent Goldstein was engaged in distributing handbills in the vicinity of the store, calling attention of union men to the Continental Clothing House and characterizing it as "a store full of scabs," and calling attention to the attempts of defendants to unionize the store and containing an appeal to organized labor to stay away from the store and to advise their friends not to patronize it.

The order further recites the activities of the said respondent Goldstein in promoting a strike and boycott of said union against the United Cigar Stores Company and the employment of similar tactics in connection with that affair. The court also found that on September 10, 1921, the respondent Pannert drove several times past the store of complainants in his automobile, to the top of which there was attached a two-faced banner calling attention to the injunction in this case and purporting to advise union men to abide by the injunction; that the banner was inscribed in such a manner as to call particular attention to the words "injunction," "strike" and "Continental Clothing House"; that Pannert had admitted that the effect of displaying such a banner in front of a store would be to prevent friends of union labor from patronizing the store and that he had displayed the banner with that idea in view. The court also found that the respondent Batowsky, alias Green, is the business agent of said Retail Clerks' International Protective Association, Local Number 195, and directed the boycott against said store and caused the respondent Goldstein to patrol in front of the store and the respondent Pannert to display the banner upon his automobile; that the effect of the acts above indicated was to cause an almost complete cessation of the patronage of said store and that the acts of the respondents were taken with the design of inducing, influencing and causing persons to refrain from patronizing

212        APPELLATE COURTS OF ILLINOIS.

Nusbaum v. Retail Clerks' Int. Protective Assn., 227 Ill. App. 206.

the store; that the three respondents, Green, Goldstein and Pannert, had deliberately violated the injunction order of the court and had failed to show cause why they should not be punished for contempt. The court then imposed a fine of $100 upon the respondent Goldstein and a fine of $50 upon each of the respondents Green and Pannert, with directions for their commitment to the county jail of Cook county until the fine is paid or until discharged according to law.

We do not deem it necessary to review in detail the affidavits and oral testimony taken upon the hearing. It is sufficient to state that the evidence in the record amply sustains the findings of fact contained in the order of November 26, 1921, from which this appeal has been prosecuted.

Appellants contend that the action of respondents in causing the banner and placard in question to be exhibited in the neighborhood of the store was not a violation of the injunction because it was the duty of respondents to do everything in their power to prevent a violation of the injunction, not only by themselves but by others, and to accomplish this it was necessary to give publicity to the fact that the injunction was issued, citing *Phillips Sheet & Tin Plate Co. v. Amalgamated Ass'n, etc., Workers,* 208 Fed. 335, and *Illinois Malleable Iron Co. v. Michalek,* 279 Ill. 221. It is doubtless true, as indicated by these authorities, that it was the duty of the persons enjoined to give proper publicity to the fact that such an injunction had been granted, in order to prevent violation of the order by members of the union in question and their sympathizers, but this did not justify the acts of the respondents which are recited in the order finding them guilty of contempt. It is apparent that the placard and banner above mentioned were of such a character as to attract the attention of persons in the vicinity of the store and to lead them to believe

that some controversy existed between the owners of said store and their employees. No such controversy existed. The placard and banner were displayed and the handbills circulated for the obvious purpose of directing public attention to the store and to cause sympathizers with union labor to refrain from patronizing the same. If respondents had been imbued with a desire to obey the injunction order in good faith, they would have sought other means for giving publicity to its existence.

Appellants contend that their action in displaying the placard and banner did not constitute picketing as that term has been defined in various cases, citing *Beck v. Railway Teamsters' Protective Union,* 118 Mich. 497, and *Ideal Mfg. Co. v. Ludwig,* 149 Mich. 133. Under these authorities a "picket" is defined as "a body of men belonging to a trade union sent to watch and annoy men working in a shop not belonging to the union, or against which a strike is in progress." It is obvious that this definition if literally followed would so limit the term "picketing" as to make it applicable in comparatively few cases. Even admitting that the acts of respondents of which complaint is made do not come within the scope of this definition, it does not follow that their acts were not a violation of the injunction order, which was not limited to picketing alone.

It is also urged that the order fining the respondents was improper, because there is no evidence in the record tending to show that complainants were injured. This contention is not sustained by the evidence, which shows that during the time when the banner and placard were displayed there was almost a complete cessation of any patronage of the store. The argument cannot be sustained, for the further reason that the question of injury to complainants is not properly before the court in a collateral proceeding for contempt in violating the injunction. *Franklin*

*Union v. People,* 220 Ill. 355; *Flannery v. People,* 225 Ill. 62; *Lyon & Healy v. Piano Workers' Union,* 289 Ill. 176. Injury and damage will be inferred in such a case. *Loven v. People,* 158 Ill. 159.

Appellants complain that evidence was admitted concerning the activities of respondent Green during the strike against the United Cigar Stores. This evidence was proper as tending to show the intent of the respondent who is charged with a conspiracy to injure complainants. Under such circumstances, evidence of other similar offenses is admissible. *People v. Pouchot,* 174 Ill. App. 1; *People v. Hagenow,* 236 Ill. 514; *People v. Buckminster,* 282 Ill. 177. The very authorities cited by appellants show that there was no impropriety in receiving such evidence. It is said in 16 Corpus Juris 587, "Such evidence may be introduced only for the purpose of showing intent, motive, knowledge or identity," and in *People v. Hobbs,* 297 Ill. 410, cited by appellants, it is held that such evidence may be considered by the jury in determining the intent with which the act charged was done, where the jury are satisfied by their testimony that the defendant committed the act with which he is charged. This rule has been sustained in many instances by the reviewing courts of this State.

While the right of employees to form unions and enlarge their membership by inviting others to join is conceded, these rights must be exercised with reasonable regard for the conflicting rights of others. The respondents united with the union in a plan to subvert the system of employment to which the employees of complainants had voluntarily agreed and upon which both employer and employee were relying. It is unlawful for a third party having notice of this relation to interfere with it without just cause or excuse. *Hitchman Coal & Coke Co. v. Mitchell,* 245 U. S. 229. The respondents were guilty of doing that which was calculated, in the ordinary course of

events, to damage and which did in fact damage complainants in their trade. They were plainly endeavoring either to bring about a strike at complainants' store or to cause the complainants such financial loss as would compel them to consent to the unionization of the store. The methods employed were unlawful and malicious and cannot be justified as a fair exercise of their right to increase the membership of the union.

The decree of the superior court is affirmed.

*Affirmed.*

BARNES, P. J., and GRIDLEY, J., concur.