## Flashner v. Amalgamated Meat Cutters & Butcher Workmen of North America, Local 195, etc.

*I. Herbert Rothenberg*, for complainant.
*Louis F. McCabe*, for respondents.

KUN, J., November 3, 1939.—This is an extraordinary case. Complainant for upwards of 20 years has operated a meat and grocery store on Columbia Avenue in the City of Philadelphia. About 12 or 13 years ago he took into his employ a boy, George Smith, then oly 12 years of age, and to all intents and purposes raised him as a member of the family, teaching him the trade of meat cutter. The youth grew into manhood and has since married. The relationship between them developed more like that of a

father and son than one of employer and employe. In this happy situation two of the respondents, organizers for respondent union, entered complainant's place of business sometime in May of 1939, and demanded that he sign a union contract with them, so that Smith would be compelled to join their union. Complainant told respondents that he had no objection to Smith joining the union if he wanted to do so, but he would not ask him or compel him to do it. He told them to talk to Smith about it. But the circumstances of their attempt to induce Smith to join with them, with all the threats expressed and implied incident thereto, persuaded Smith not to join. Thereupon the organizers made another attempt with complainant to induce him to sign a so-called union contract for a union shop, the real object of which was to force Smith to join the union. Upon complainant's repeated refusal to attempt to coerce Smith in this way, the two organizers at once called a group of pickets, prepared for the eventuality, to take their places in front of complainant's store, and to begin operations in the usual manner. They arranged themselves in such formations as to make ingress to and egress from complainant's place of business difficult, if not impossible. The pickets were loud and boisterous, taunting and threatening prospective customers, using such statements that complainant sold "poisoned and rotten meat", and "short-changed" his customers. They threatened delivery men against serving complainant; whereupon deliveries stopped, which made it necessary for complainant to arise in the very early hours of the morning to go out and obtain merchandise with which to do business, merchandise which ordinarily would be delivered to him during business hours. The pickets played ball on complainant's pavement, littered it up with filth and refuse, slimy expectoration, and even urine. To climax these wrongs done to complainant, the pickets carried signs stating that he was "unfair" to organized labor.

The court did not hesitate to grant a preliminary injunction against respondents prohibiting such picketing and the carrying on of such practices. The union now want to be "good boys" and want the right to carry on what they call "peaceful picketing", that is, have one or two men walk up and down in front of complainant's store carrying signs or placards containing such a statement, as for instance, "non-union help employed here," with the addition of the exhortation "buy meat only handled by union workers", or something of that sort.

We might determine the matter on the basis of the principle announced in the case of Exchange Bakery & Restaurant, Inc., v. Rifkin, etc., et al., 245 N. Y. 260, 269, as follows:

". . . where unlawful picketing has been continued; where violence and intimidation have been used and where misstatements as to the employers' business have been distributed, a broad injunction prohibiting all picketing may be granted;" followed in the later case of Busch Jewelry Co., Inc., et al. v. United Retail Employees' Union, etc., et al., 168 Misc. 224, 5 N. Y. Supp. (2d) 575, affirming memorandum in 255 App. Div. 970, 8 N. Y. Supp. (2d) 819. This ruling was made though there was in New York at the time an anti-injunction act similar to our Act of 1937.

We have been asked, however, to consider the matter before us on a much broader basis, and that is on the question as to whether or not there is, in the circumstances of the case before us, any right of picketing at all. In 3 Words and Phrases (2d series) p. 1030, "Picketing" is defined as follows:

"The word 'picket' is defined as 'a body of men belonging to a trades union, sent to watch and annoy men working in a shop not belonging to the union, or against which a strike is in progress.' Originally the word had no such meaning, and this definition is the result of what has been done under the term and the common application that has been made of it. Ideal Mfg. Co. v. Ludwig, 112

N. W. 723, 725, 149 Mich. 133, 119 Am. St. Rep. 656 (quoting Beck v. Railway Teamsters' Protective Union, 77 N. W. 13, 118 Mich. 497, 42 L. R. A. 407, 74 Am. St. Rep. 421, Cent. Dict. and Webster's Dict.)." And at page 1031 of the same volume picketing is referred to as a form of "intimidation", citing cases.

It is suggested that "peaceful" picketing is a lawful right. The actual prejudicial purpose of picketing is not changed by adding the euphemistic adjective "peaceful" to the term. As was said in Atchison, T. & S. F. Ry. Co. v. Gee et al., 139 Fed. 582, at page 584:

"The pretense of this picketing is the right to converse with the new employés and persuade them to quit, and the further pretense that they desire to see who are at work. This picketing is done by details of pickets, assigned by others; they taking turn. At all hours when men are going to and from work, morning, noon, and evening, the workmen must go through and by pickets, sometimes two, four, six, and more, at a place. At times the paths and walks are obstructed. At times the pickets are near by, making grimaces, and at times acting as if violence were intended, and at times uttering profanity and vulgarity. There is and can be no such thing as peaceful picketing".

In Truax et al., etc., v. Corrigan et al., 257 U. S. 312, at page 340, 42 Sup. Ct. 124, at page 132, the Supreme Court of the United States, through Chief Justice Taft, said: ". . . peaceful picketing is a contradiction in terms . . .". In a much later case, Senn v. Tile Layers Protective Union et al., 301 U. S. 468, 57 Sup. Ct. 857, the court sustained the power of the State by legislative act to affirmatively grant such a right, such grant being held to be not in violation of the fourteenth amendment. Both cases were five-to-four decisions. In Jefferson & Indiana Coal Co. v. Marks et al., 287 Pa. 171, 184, our Supreme Court speaking through the chief justice directed the elimination of the word "peaceful" in an injunction decree against picketing and it was enjoined "whether actual force or

violence be used or not." And Judge Dickinson, of the United States District Court for the Eastern District of Pennsylvania, said in the case of Tri-Plex Shoe Co. v. Cantor et al., 25 Fed. Supp. 996, 997: "The idea of a peaceful picket or peaceable picketing is a myth. The purpose is not to persuade other employees or the public but to stop the business of the employer." Notwithstanding all the criticism which has been leveled against it, the advanced view is that in general (peaceful) picketing is lawful; but the error lies in the assumption that it is lawful in any and all circumstances.

It is insisted in this case that the right exists under the right of "free speech", which indeed has been drawn upon in many cases to support the right. In postulating so much on the right of "free speech," the other right, of equal dignity, if not a more important one, having to do with the actual substance of life, namely, the right to do business and to earn a living without unlawful interference, is too often overlooked. Can the one, the right of "free speech", be insisted upon at the expense of and in violation of the other, the right to work and to do business unmolested under all circumstances? We think not. Where there is a clashing of these rights there must be some balancing of them on equitable considerations, and the infringement of one or the other can be justified only upon the most compelling circumstances. The difficulty arises mostly in the realm of the relationship between employer and employe, where, because of changing views on industrial relationships, there has come about a broadening base for the consideration of rights of workers, and it is now generally recognized as being necessary for the welfare of the community that there be a special classification of the relations of employes and employer, requiring special treatment. There was an attempt made in this State by the Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, to go to such an extreme in that direction as to give rights thereunder even to strangers as between whom and an employer there had never been any proximate re-

lationship of employer and employe. This was changed by the amendment of June 9, 1939, P. L. 302, which provides that the Labor Anti-Injunction Act shall not apply. Section 4($b$) provides:

"Where a majority of the employes have not joined a labor organization, or where two or more labor organizations are competing for membership of the employes, and any labor organization or any of its officers, agents, representatives, employes, or members engages in a course of conduct intended or calculated to coerce an employer to compel or require his employes to prefer or become members of or otherwise join any labor organization."

We have then this situation: Where more than 50 percent of the employes in a given case have joined a labor organization, it is the declared policy of the State, through action of its legislature, that the courts shall not issue injunction against such groups in relation to their activities in any labor dispute they may have with the employer (subject always to the power of the courts to restrain violence), but where there is not such a majority of employes so organized, or where two or more labor organizations are competing for membership of the employes, or where any labor organization or group of employes attempts to coerce an employer to compel his employes to join a labor organization, or prefer one over another, then the courts are free to use their equitable powers, as before.

Aside from the specific statutory provisions which, in our opinion, control this case, it was established in the leading case of Erdman v. Mitchell, 207 Pa. 79, that an attempt on the part of unionized workmen to coerce others to join them by intimidating them and their employers, as by threat of a strike, was unlawful and ought to be restrained. The action there was on the part of non-union workers asking the protection of the court. A reading of the opinion in that case is helpful as directing attention to some fundamental principles touching the basic rights of people which in recent times have too

often been overlooked. The court, at page 93, quoted with approval the following from Plant et al. v. Woods et al., 176 Mass. 492:

" 'The manifest object of the defendants was to have all the members of the craft subjected to the rules and discipline of their particular union in order that they might have better control over the whole business, and to that end they combined and conspired to get the plaintiffs and each of them to join the defendant association, peaceably if possible, but by threat and intimidation if necessary. . . . The right involved is the right to dispose of one's labor with full freedom. This is a legal right and is entitled to legal protection. . . . The purpose of these defendants was to force the plaintiffs to join the defendant association, and to that end they injured the plaintiffs in their business and molested and disturbed them in their efforts to work at their trade. It is true they committed no acts of personal violence or physical injury to property, although they threatened to do something which might reasonably be expected to lead to such results. In their threat however, there was plainly that which was coercive in its effort upon the will. It is not necessary that the liberty of the body should be restrained. Restraint of the mind, provided it would be such as would force a man against his will to grant the thing demanded, and actually has that effect, is sufficient in cases like these.' "

In the case of Purvis v. Local No. 500, United Brotherhood, etc., et al., 214 Pa. 348, the court, following the Erdman case, said at page 354:

"The appellants contend that they seek only to persuade, and not to coerce; but their means of persuasion are the destruction of the property of those whom they would persuade. As well might it be said that the sight of the club or gun of the highwayman without actual violence simply persuades. No violence was used by the appellants, and it does not appear that any was contemplated or threatened; but coercion may be accomplished without threats or violence and the attempt to so

accomplish it was made in this case. Putting one in actual fear of loss of his property or of injury to his business, unless he submits to demands made upon him, is often no less potent in coercing than fear of violence to his person. 'Restraint of the mind, provided it would be such as would be likely to force a man against his will to grant the thing demanded, and actually has that effect, is sufficient in cases like this:' Plant v. Woods, 176 Mass. 492. Of the conduct of the appellants the words of our late Brother Dean, in Erdman v. Mitchell, 207 Pa. 79, may well be repeated: 'How absurd is it to call this peaceable persuasion, and how absurd to argue that if the law attempts to prevent it the right of the workmen to organize for their common benefit is frustrated.' "

In a more recent case, Mische et al. v. Kaminski et al., 127 Pa. Superior Ct. 66, the court, following the cases cited, said at page 83:

"We have here an employer intimidated and forced to dismiss plaintiffs from its employ, their work being satisfactory to the employer and no complaint by plaintiffs. As was said in *Jefferson & Indiana Coal Co. v. Marks et al.*, supra, [cited herein, supra] a person may work for whom he pleases, at the particular wages he pleases and as to this right no association of men can lawfully interfere. 'A government which admits its inability to protect an honest workman in the pursuit of useful employment, simply admits its inability to function properly. This right has its corresponding right in the employer, to engage and have him work'; and a reading of the decision in the *Coal Co. v. Marks*, supra, will be of interest to the officers and members of labor organizations, in which they are advised that the law does not look with favor on an enforced discussion of the merits of the issue between individuals who wish to work, and groups of those who do not, under conditions which subject the individuals who wish to work to a severe test of their nerve and physical strength and courage."

The latter statement was taken from the opinion of Chief Justice Taft in American Steel Foundries v. Tri-City Central Trades Council et al., 257 U. S. 184, 204, 206, 207, so referred to in the opinion of the Jefferson & Indiana Coal Company case, in which, as noted, picketing was enjoined "whether actual force or violence be used or not", the word "peaceful" in connection therewith in the decree of the lower court being stricken out by the Supreme Court.

In Kraemer Hosiery Co. et al. v. American Federation, etc., et al., 305 Pa. 206, 215, all the general principles referred to were again affirmed, and while it was conceded that even a stranger under the general right of free speech had "the right at a proper time and in a proper way, to point out to plaintiff's employees that their contracts, whether legal or illegal, were unwise, and hence the employees should exercise their privilege to 'withdraw from the employment' ", he was enjoined from picketing plaintiff's plant for the purpose of inducing or attempting to induce plaintiff's employes to violate their contract of employment.

This brings us to the pivotal point of the case, a consideration of the purpose of the picketing complained of. If the purpose is lawful, it cannot be restrained, although it may incidentally injure the other party, for that is the price we must sometimes pay or suffer for the privilege of living in a civilized society. If the purpose is unlawful, it can and should be restrained. Where a strike was called to force the collection of a stale claim due to a fellow-member of the union who was formerly employed in the business, this was held not to be a permissible purpose. That was the case of Dorchy v. Kansas, 272 U. S. 306, in which Mr. Justice Brandeis, speaking for the Supreme Court, said (p. 311) :

"The right to carry on business—be it called liberty or property—has value. To interfere with this right without just cause is unlawful. The fact that the injury was inflicted by a strike is sometimes a justification. But a

strike may be illegal because of its purpose, however orderly the manner in which it is conducted. To collect a stale claim due to a fellow member of the union who was formerly employed in the business is not a permissible purpose. . . . Neither the common law, nor the Fourteenth Amendment, confers the absolute right to strike."

The same may be said with equal force about picketing. Is the proposed picketing in the instant case for a lawful purpose? Clearly it is not. Complainant has one employe, who does not want to join respondent union. It is obviously not a case where more than 50 percent of the employes of the establishment have joined the union, to which the Labor Anti-Injunction Act of 1937, as amended by the Act of 1939, supra, would apply. Moreover it does not apply because of the provision that it should not apply where "any labor organization or any of its officers, agents, representatives, employes, or members engages in a course of conduct intended or calculated to coerce an employer to compel or require his employes to prefer or become members of or otherwise join any labor organization": sec. 4(b). That is precisely what the proposed so-called peaceful picketing is intended to do; that is to say, by having a picket march up and down in front of complainant's place of business with a placard reading, as proposed here, "Non-union help employed here", and "Buy meat only which is handled by union workers", it is expected that in time the economic pressure to which he will be subjected will compel complainant to coerce his employe to join the union, or else discharge him and engage a union man. It is clear, therefore, that under the Act of 1939 such picketing is illegal because of its unlawful purpose, however orderly the manner in which it may be conducted, just as in the case of the strike declared illegal by Mr. Justice Brandeis because of its unlawful purpose, in the case cited.

There is nothing in the decisions of the cases of Senn v. Tile Layers Protective Union et al., supra, and Kirmse et al. v. Adler et al., 311 Pa. 78, so much relied upon by

respondents, which requires a different conclusion. In the former case, as already pointed out, the right of picketing was sustained because the State statutes, as construed by the highest court of that State (Wisconsin), expressly and affirmatively gave the right to picket in the circumstances there existing. The court said (p. 481):

"Whether it was wise for the State to permit the unions to do so [picket in the circumstances] is a question of its public policy—not our concern. The Fourteenth Amendment does not prohibit it."

That is all that the case decides. Because of the amending Act of 1939, there is no such statute in Pennsylvania, giving the right to picket in a case such as the one before us. In the Kirmse case the question involved was the right (be it specially noted) of former employes to distribute handbills stating their cause and inviting public support. The court sustained their right to do it, adding significantly, however, even as to that (p. 89):

"Of course such conduct in front of or adjoining the theatre entrance, continued over a period of time, would create a situation calculated to engender annoyance, fear, and intimidation of possible patrons".

So that we take it that in those circumstances even such acts might be enjoined. However, the court also said (p. 88):

"There is no question here of the right to picket in a strike"; and while it was also stated on the same page that "Picketing if peaceful and unaccompanied by coercion, duress, or intimidation, is lawful", this means if conducted for a lawful purpose.

We would not limit, restrict, or interfere with the real and true right of freedom of speech in any case, even though it should result to the damage of another, but we cannot give aid to those who would seize upon this sacred right as a cloak for accomplishing a clearly unlawful purpose. There is no question of a strike involved in this case, as indeed there could not be, inasmuch

as the one employe of complainant is well satisfied with his employment and does not wish to join respondent union. None of defendants ever was an employe of complainant. There never existed between them any relationship of employer and employe. They are total strangers to both the employer here and his employe. It is insisted, however, on behalf of respondents that, in spite of this clear factual situation, there exists a "labor dispute," pointing to section 3(c) of the Labor Anti-Injunction Act of 1937, supra, which, it is claimed, is in force, notwithstanding the amending Act of 1939. Under the Act of 1937, the term "labor dispute" was (in section 3(c)) provided to include any controversy concerning terms or conditions of employment, etc., "regardless of whether or not the disputants stand in the proximate relation of employer and employe", etc., meaning that though there was in fact no controversy between the employer and his employes in a given case, yet total strangers could raise something like a unilateral dispute (itself a contradiction), and picket the place of business in support of their views, and the courts were prohibited from enjoining such picketing so long as there was no fraud, duress, violence, etc. (section 6(e)). However, the legislature by the amending Act of 1939 expressed a complete reversal of policy on this point by the provision (section 4(b)) that the Act of 1937, meaning, inter alia, the restrictions just referred to, shall not apply where a majority of employes have not joined a labor organization, etc. The effect of the amendment is as though the original Act of 1937 had itself provided that it should not apply where a majority of employes have not joined a labor organization, etc. That is to say, unless a majority of employes in a given case have joined a labor organization for the purpose of collective bargaining, a controversy raised by strangers concerning terms or conditions of employment cannot be considered a "labor dispute" as to which the restrictive provisions of the Labor Anti-Injunction Act of 1937, as amended by the

Act of 1939, may be applied. Respondents have no lawful right, either under any statute law of this Commonwealth, or under any of the decisions of our courts, to picket in front of complainant's place of business for the avowed purpose of compelling him to force his one employe to join their union. This does not prevent them from using any and every other means of peaceful persuasion to have him do so.

Accordingly, the preliminary injunction heretofore issued is made permanent.