**Rothschild & Company, Appellee, v. Boston Store of Chicago, Appellant.**

**Gen. No. 25,583.**

**Rothschild & Company, Appellee, v. Boston Store of Chicago. Mayo Friedberg, Appellant.**

**Gen. No. 25,584.**

1. INJUNCTION, § 250*—*when order is not violated.* A department store corporation, which advertised by placards that it was selling one Louis J. Rothschild's entire stock of millinery at 50 cents on the dollar, was not guilty of contempt of an injunctional order granted without notice under a bill filed by a competing department store widely known as "Rothschilds,'" restraining the use by the defendant of advertisements in such a manner as to hold out or induce the belief that defendant was selling complainant's millinery stock, where the placards, which defendant continued to display for some hours after the service of the order, contained information, legible at a reasonable distance, showing that the stock was that formerly owned by one Louis J. Rothschild of St. Paul, Minnesota, although the word "Rothschild's" was in somewhat larger type than the other words.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

420 APPELLATE COURTS OF ILLINOIS.

Rothschild & Co. v. Boston Store of Chicago, 219 Ill. App. 419.

2. INJUNCTION, § 249*—*when complainant must show injury because of violation of injunction.* In a proceeding to punish a party for the breach of an injunction, the complaining party must not only show a breach, but must also show that he has in some way been injured thereby.

3. APPEAL AND ERROR, § 1813*—*what need not be recited in reversing order.* A proceeding to punish for violating an injunction being in the nature of a chancery proceeding, it was not necessary for the Appellate Court, in reversing, to recite in its final order or judgment the facts as found, although, as indicated in the opinion, different in part from the finding of the trial court.

Appeal from the Circuit Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1919. Reversed. Opinion filed October 13, 1920.

JOHN A. BLOOMINGSTON, for appellants.

JUDAH, WILLARD, WOLF & REICHMANN, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

These are separate appeals from orders entered by the circuit court of Cook county on May 12, 1919—one adjudging the Boston Store of Chicago guilty of contempt of court in violating a preliminary injunction, granted without notice upon the bill of complaint of Rothschild & Company, and imposing a fine upon the Boston Store of $100, and the other adjudging Mayo Friedberg (advertising manager of the Boston Store) guilty of contempt of court in violating said injunction and imposing a fine upon him of $25, and committing him to the county jail for a period of 2 days. By stipulation the appellants filed one certificate of evidence and the separate appeals were here consolidated for hearing.

In complainant's bill, filed March 25, 1919, it is alleged, in substance, that it is an Illinois corporation

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

doing a large general department store business in its building located on the east side of State street in Chicago, and extending north from Van Buren street to a point approximately 50 feet south of the intersection of Jackson boulevard and State street, and having entrances on Van Buren and State streets and on Jackson boulevard; that it has a large millinery department where trimmed and untrimmed hats, flowers, feathers, etc., are sold at retail to the public; that it has expended large sums in advertising in the daily and Sunday newspapers in Chicago and has acquired a valuable good will; that its department store is widely known and generally referred to by the public as "Rothschilds'"; that for many years it has been in the habit of using the name "Rothschilds'" interchangeably with the words "Rothschild & Company" in its advertisements; that the defendant, Boston Store, is an Illinois corporation, also doing a large department store business in its building fronting on State, Madison and Dearborn streets in Chicago; that it also has a large millinery department, in which it sells hats, trimmings, etc., at retail to the public, in competition with complainant; that it also advertises its merchandise, including millinery, in the daily and Sunday newspapers in Chicago; that said defendant, for the purpose of injuring complainant's business and diverting intending purchasers from its store and particularly from its millinery department, caused to be inserted in the Sunday, March 23, 1919, editions of two Chicago newspapers a full page advertisement (copy attached, marked "Exhibit A"); that the intent and effect of said advertisement was to lead complainant's customers and the public to believe that the stock of millinery therein mentioned and offered for sale was the stock of complainant; that the name "Rothschild's" was printed in parts of the advertisement in big, black letters, at one time preceded by the words "Louis J." in small letters, and at other times with-

out said words; that said Louis J. Rothschild referred to was a dealer in millinery at St. Paul, Minnesota, and whose business was entirely unknown to the trading public of Chicago; that it was stated in the advertisement that the stock of millinery was "Rothschild's entire $23,500 stock," which statement was misleading, in that said stock had cost the defendant only about the sum of $5,000, and intending purchasers and the public generally were induced to believe that complainant had sold its entire stock of millinery, hats, flowers, etc., to defendant and had discontinued its millinery department; that defendant has also displayed, and is now displaying, in the windows of its store, signs and placards, containing in large, black type the words "Rothschild's entire $23,500 stock trimmed and untrimmed hats and flowers, feathers, etc., at 55¢ on the $," and containing in small words over the word "Rothschild's" the words "Louis J.," and underneath the word "Rothschild's," in small letters, in parenthesis, the words "355 Jackson St., St. Paul," which signs and placards are calculated to deceive intending purchasers and the public generally, and to induce in their minds the belief that defendant is selling the entire stock of millinery, etc., of complainant at 55 cents on the dollar; that defendant is also displaying on its counters and show cases, and in other prominent locations in its store, other signs, containing in large letters the words "Rothschild's Stock," with the words "St. Paul" underneath in small letters, which said signs are likewise calculated to mislead intending purchasers and the public as aforesaid; that said stock of millinery, etc., so advertised and offered for sale, is not and never was the property of complainant; that defendant is threatening to continue placing similar advertisements in the daily newspapers, and similar placards and signs in its store; that complainant has been damaged and will be further damaged unless the

unlawful acts of defendant are enjoined; and that an injunction should issue without notice, etc. The order for the preliminary injunction, entered March 25, 1919, is in accord with the prayer of the bill, and is in part that the Boston Store of Chicago, its officers, employees, agents and attorneys be enjoined and restrained

"from publishing, circulating or displaying, or causing to be published, circulated or displayed, any advertisement, announcement, sign or placard bearing the name 'ROTHSCHILD'S' displayed in connection with any advertisement or announcement of said defendant, Boston Store of Chicago, in such manner as or by the use of such words or phrases, or group or combination of words or phrases, thereby to represent, hold out or induce the belief that said defendant  *  *  *  has for sale, is selling, or is intending or offering for sale, merchandise formerly the property of the complainant, and particularly from publishing  *  *  *  any advertisement similar to that alleged and attached to the bill of complaint herein as 'Exhibit A,' or any advertisement of the same character or containing similar language, and from representing or stating to intending customers or purchasers, or to the public, that said defendant  *  *  *  is selling or offering for sale any millinery, hats, flowers, feathers, etc., formerly sold by or a part of the stock of the complainant, .  *  *  *."

The injunction writ was served on the defendant about 11:50 o'clock a. m. on Tuesday, March 25. At that time there was on exhibition in a conspicuous show window of the store of defendant a sign or placard, marked "Exhibit 1," and in another window another sign or placard, marked "Exhibit 2." On tables, where the hats, millinery, etc., were being sold, there were 23 smaller signs or placards. All of the placards were removed at about 2 o'clock p. m. on said day, and at about 3 o'clock p. m. placards, somewhat changed and marked, respectively, "Exhibit 1 A" and "Exhibit 2 A," were placed in the show windows where Exhibits 1 and 2 had been. At about the same

time the 23 smaller placards, only changed by adding above the words "Rothschild's Stock" the letters "L. J.," and being similar to "Exhibit 3," were replaced upon the tables. Said Exhibits "1 A" and "2 A" remained in the show windows, and the 23 smaller placards, similar to "Exhibit 3," remained on the tables until about 6:30 p. m., on the evening of the same day, March 25, when they were all removed at the suggestion of the attorney for the Boston Store. On March 26, the complainant filed its petition, supported by affidavits, for a rule on the Boston Store, and R. C. Mangold and Mary McGrath, respectively, superintendent and manager of the millinery department of said Boston Store, to show cause why they severally should not be punished for contempt for neglect and refusal to comply with said injunctional order. On April 3 this petition was amended by making Mayo Friedberg, advertising manager of said Boston Store, and Charles Netcher, its vice president, additional parties defendant thereto, and the court entered the rule. Subsequently the sworn answers of the Boston Store and Mayo Friedberg, supported by affidavits, were filed, and a lengthy hearing was had, resulting in the court discharging the rule as to R. C. Mangold, Mary McGrath and Charles Netcher, but adjudging that said Boston Store and said Mayo Friedberg were guilty of contempt of court and imposing the penalties on them, severally, as aforesaid.

In the order adjudging the Boston Store guilty of contempt the court finds that, since the entry of the injunctional order of March 25, 1919, and after knowledge by it through its officers and employees of said order, the Boston Store caused to be displayed in its show windows and on certain of its counters announcements, signs and placards bearing the name "Rothschild's"; that said name was written in large, heavy and prominent type on a separate line, preceded by the words, "Louis J." or "L. J.," in smaller and less

prominent type and on a different line; that said announcements, signs and placards

"were worded in such a manner and the words and phrases and type used therein were so grouped, combined and arranged as to hold out and represent to intending customers and purchasers and the public and induce them to believe that said Boston Store　*　*　* was selling or offering for sale merchandise, millinery, hats, flowers, feathers, etc., formerly the property of or part of the stock of the complainant, Rothschild & Company; that said announcements, signs and placards　*　*　* were, in respect to the size, prominence of type and the grouping and combination thereof and arrangement of the words, 'Rothschild's' and 'Louis J.,' similar to and of the same character as the advertisement, alleged and attached to the bill of complaint in said cause as 'Exhibit A'; that said announcements, signs and placards　*　*　* were intended, designed and calculated to and had the effect of inducing the belief on the part of intending customers and purchasers and the public generally that the stock of merchandise thereby offered for sale was the stock formerly the property of the complainant, Rothschild & Company; and that by causing said announcements, signs and placards to be displayed as aforesaid said defendant　*　*　* knowingly, wilfully and intentionally, after knowledge thereof, violated said injunctional order of this court and the writ of injunction issued in pursuance thereof."

In the order adjudging Mayo Friedberg guilty of contempt the court finds that after knowledge by him of the entry of said injunctional order he caused to be displayed in the show windows of the Boston Store said announcements, signs and placards. The other findings are substantially the same as in the order as to the Boston Store.

The stock of millinery, etc., which the Boston Store was advertising for sale prior to the entry of said injunctional order, by means of newspaper advertisements and by the use of Exhibits 1, 2 and 3 (Exhibit 3

then not having thereon the letters "L. J."), and which the Boston Store advertised for sale for about 3½ hours after the service of the injunction writ, by the use of the placards Exhibits 1 A, 2 A and 3 (Exhibit 3 then having thereon the letters "L. J."), was a stock formerly the property of Louis J. Rothschild, St. Paul, Minnesota. The Boston Store had purchased the stock for $5,300 in cash, and the stock was worth at its wholesale value from $20,000 to $23,000. Because of financial difficulties Louis J. Rothschild sold the stock at the price named. He had been engaged in the wholesale and retail millinery business at 355 Jackson Street, St. Paul, for a considerable period of time. His wholesale department was advertised as "Louis J. Rothschild, red seal brand," and his retail department as "Rothschild's Millinery," and both were well known in St. Paul. On merchandise sold by him there was a red shield, or label, bearing his name and other descriptive matter.

The 23 placards (of which Exhibit 3 is one) were each approximately 11 inches long and 7 inches high. Each bore at the top the words, in red letters, "Louis J. Rothschild's Stock (St. Paul)." Below in larger black figures was a price mark. In the upper left-hand corner was a red shield, upon which were embossed, in gilt letters, the words "Louis J. Rothschild, St. Paul's New Wholesale House of Millinery Specialties. Red Seal Brand." These placards stood on standards which were placed in the center of round tables in the millinery department of the Boston Store. The signs differed only in respect to the price mark which was on them severally—said price mark indicating the amount for which the articles on the several tables would be sold. As the signs stood upon the standards upon the tables each sign was approximately 3 feet away from the eyes of a person standing close to and facing the table. The placard, Exhibit 1A, was approximately 11 inches wide by 17 inches high,

and it replaced Exhibit 1 in one of the show windows on State street of said Boston Store. The width of this show window was 6 feet and its depth about 7 feet, and its glass front was about 12 feet in height. The placard had thereon the words and figures "Louis J. Rothschild's Entire Stock Trimmed and Untrimmed Hats and Flowers, Feathers, etc., at 55¢ on the $, Second Floor, State St." All the words were in black letters except the words and figures "at 55¢ on the $," which were in red. The letters "Louis J." were above the word "Rothschild's" and of slightly smaller size. The placard, "Exhibit 2A," was approximately 15 inches wide by 22 inches high, and it replaced Exhibit 2 in a larger show window, also on State street. It differed from Exhibit 1A in the size of the lettering, and in that, underneath the word "Rothschild's" were the words and figures, in considerably smaller size "(355 Jackson St., St. Paul)," and the size of the letters "Louis J." above the word "Rothschild's" was considerably smaller than the letters of said word. Both Exhibits 1A and 2A were placed at about the middle of each show window and at a distance of about 18 inches back from the window glass. Said original Exhibits, 1A, 2A and 3 have been certified and transferred to this Appellate Court. They have been carefully viewed from different distances. On Exhibits 1A and 2A the letters "Louis J." can be easily seen at a distance of 20 feet, as can be, on Exhibit 2A, the words and figures "(355 Jackson St., St. Paul)." On Exhibit 3 the letters "L. J." and the word "(St. Paul)" are as easily discernible from different distances as are the words "Rothschild's Stock."

The printed briefs and arguments here filed are voluminous. And we have been assisted by able oral arguments by respective counsel. During the arguments counsel for appellee stated, in substance, that he did not claim that there had been any violation of the injunction, after the service of the writ, as regards

any advertisement in any newspaper, or in the placing on the 'tables of the 23 placards similar to Exhibit 3, but that he relied solely on the placing or causing to be placed by appellants of the placards, Exhibits 1A and 2A, in the show windows, after the service of the writ, as grounds for sustaining the court's several orders.   The injunctional order, in substance, enjoined appellants from publishing or displaying, or causing to be published or displayed, any advertisement, announcement, sign or placard, bearing the name ROTHSCHILD'S, displayed in connection with any advertisement or announcement of said defendant, Boston Store *"in such a manner* as or by the use of such words or phrases, or group or combination of words or phrases, *thereby to represent,* hold out *or induce the belief* that said defendant   *   *   *   has for sale, is selling, or is intending or offering for sale, merchandise formerly the property of the complainant,   *   *   *   and from representing or stating to intending customers or purchasers, or to the public, that said defendant   *   *   * is selling or offering for sale any millinery, hats, flowers, feathers, etc., formerly sold by or a part of the stock of the complainant.''   After a careful examination of said Exhibits 1A and 2A, we cannot agree with the findings of the trial court, as stated in the several orders appealed from, that said announcements, signs and placards "were worded in such a manner and the words and phrases and type used thereon were so grouped, combined and arranged as to hold out and represent to intending customers and purchasers and the public and induce them to believe that said   *   *   *   Boston store was selling or offering for sale merchandise, millinery, hats, flowers, feathers, etc., formerly the property of or part of the stock of the complainant, Rothschild & Company.''   We do not think that said exhibits had such an effect or would induce such a belief in the minds of intending customers or purchasers or the public.   A person standing at a

distance of 20 feet, or less, from either placard could plainly see the letters "Louis J." above the word "Rothschild's," and on the placard, Exhibit 2A, could also plainly see the words and figures "(355 Jackson St., St. Paul)" underneath the word "Rothschild's." Furthermore, the transcript before us does not disclose that any witness testified that said placards, Exhibits 1A and 2A, had such an effect upon him or induced in him such a belief. Neither is there any testimony in the record that the complainant, Rothschild & Company, was in any way injured by the acts of the appellants in causing said placards to be so displayed. We understand it to be the law that in a proceeding to punish a party for the breach of an injunction, the party complaining must not only show a breach, but he must also show that he has in some way been injured thereby. (*People v. Diedrich,* 141 Ill. 665, 671.)

Our conclusions are that the trial court, under the evidence, was not warranted in making the findings of fact, last above quoted, in the several orders appealed from, and in finding that each of the appellants violated the said injunctional order, and that the court erred in adjudging them guilty of contempt of court and in imposing the penalties above mentioned severally upon them. For the reasons indicated the several orders or judgments of the circuit court are reversed. This being in the nature of a chancery proceeding (*People v. Diedrich,* 141 Ill. 665, 670), it is unnecessary for this Appellate Court to recite in its final order or judgment the facts as found, which are different in part as above indicated from the findings of the trial court. (Section 120, Practice Act, J. & A. ¶ 8657.)

*Reversed.*

Barnes, P. J. and Matchett, J., concur.