MICHAEL DEBOWSKI *et al.*, Plaintiffs-Appellees, *v.* SHRED PAX CORPORATION *et al.*, Defendants-Appellants.

Second District (1st Division)   No. 76-380

Opinion filed January 10, 1977.

Leonard Cuttone and Louis M. Leider, both of Chicago, for appellants.

Dorsey L. Baker, of Haight, Hofeldt, Davis & Jambor, of Chicago, for appellees.

Mr. JUSTICE YONTZ[*] delivered the opinion of the court:

Plaintiffs filed this action on December 16, 1975, complaining of a threatened breach of a contract which they entered into on March 28, 1975, with Shred Pax Corporation and its principal shareholder, Alvis Kaczmarek. Shred Pax is an Illinois corporation engaged in the business of manufacturing and selling refuse shredding machines under U.S. Letters Patent.

Prior to March 28, 1975, Shred Pax Corporation was managed under the terms of a voting trust agreement with plaintiff Debowski acting as president and drawing an annual salary of $25,000. At that time defendant Alvis Kaczmarek owned 55,000 of the 89,200 shares of common stock of Shred Pax Corporation. Plaintiffs owned 30,200 shares.

An agreement entered into March 28, 1975, dictated that plaintiffs convey their 30,200 shares of common stock to Alvis Kaczmarek in exchange for certain foreign patents and patent rights then personally

---

[*] Chief Judge of the Tenth Judicial Circuit sitting by order of assignment of the Illinois Supreme Court.

owned by Kaczmarek together with an option to repurchase their stock. In addition, Shred Pax Corporation, under the terms of paragraph 5 of the March 28, 1975, agreement, acknowledged it was indebted to plaintiffs in the amount of $101,000. To secure these loans and certain promises and representations of defendant Kaczmarek, defeneants granted to plaintiffs a security interest in the stock of Shred Pax to the extent of $300,000.

On December 12, 1975, defendants entered into agreements entitled "License Agreement" and "Option Agreement to Buy Inventory and Fixed Assets" with Walter Klevay of the State of Ohio. The "License Agreement" had as its stated purpose the transfer of the refuse reducing machine operations of defendant Shred Pax to Klevay while the "Option Agreement" granted Klevay the option to purchase "all assets" of Shred Pax "in order to completely terminate its [Shred Pax'] ongoing business."

Plaintiffs filed suit complaining, *inter alia*, that the Klevay transaction threatened their security interest in the corporation given pursuant to the March 28, 1975, agreement. The trial court denied plaintiffs' motion for a temporary restraining order. A hearing was held on plaintiffs' petition for a preliminary injunction in early February 1976. While testimony was introduced by both parties, defendant Kaczmarek was absent from these proceedings. Subsequent to the proceedings the trial court entered an order enjoining defendants from receiving any revenue or consideration from the sale, transfer, or other alienation of property of Shred Pax and requiring such consideration to be paid to the Hawthorne Bank of Wheaton, Illinois. The court ordered Hawthorne Bank to permit payment to defendant Shred Pax of $6000 a month to meet its daily operating expenses. In reaching the conclusion that the issuance of a preliminary injunction was proper the trial court made the following factual findings, among others:

> " * * * The transfer of the *sole* and *exclusive* right (P. Ex. 10) to make, use and sell the refuse reducing machines has destroyed and paralyzed the defendant Shred Pax's 'business of manufacturing and selling refuse reducing machines in the United States under U.S. patents' and destroyed the value of plaintiff's options.
> * * * The transfer of the assets of Shred Pax in partial exchange for paper stock, to a foreign jurisdiction, without consent and without full assumption of liabilities may hinder delay or defraud these creditor-plaintiffs, and substantially impair the value of their collateral."

On February 20, 1976, plaintiffs caused the injunction writ to issue and be served upon defendants and Klevay. On February 25, 1976, Walter Klevay, with defendant Kaczmarek's knowledge, paid Itasca State Bank the sum of $243,887.99 for a release of their lien on machinery, equipment

and inventory owned by Shred Pax. The bank applied these monies to payment of debts of Shred Pax which were past due.

On March 10, 1976, defendants moved to vacate the preliminary injunction imposed by the order of February 19, 1976. This motion was denied by the trial court on March 30, 1976. From the order of March 30, 1976, defendants sought to appeal. Appeals were docketed in this court first under No. 76-167 and then under No. 76-272. After consideration of motions to dismiss filed in each appeal by plaintiffs, orders dismissing the appeals were entered by this court.

Defendants filed a second motion to dissolve the preliminary injunction on June 8, 1976. Also on June 8, 1976, plaintiffs filed a petition for rule to show cause why defendants should not be held in contempt for failing to have the proceeds of the sale of the inventory of Shred Pax paid to Hawthorne Bank as required by the order of February 19, 1976.

A hearing was held at which plaintiffs and defendant offered testimony. At the close of the hearing the trial court found defendants Kaczmarek and Shred Pax in contempt of court and refused to dissolve the preliminary injunction earlier entered. An order to such effect was entered on July 23, 1976.

On July 26, 1976, defendant Kaczmarek was sentenced to six months imprisonment in the Du Page County Jail, such imprisonment to be terminated upon payment by Kaczmarek to the Hawthorne Bank of $243,887.99, the amount paid the Itasca State Bank by Klevay. On July 28, 1976, the trial court entered an order denying a motion earlier filed by defendant seeking dismissal of plaintiffs' complaint for lack of jurisdiction of the subject matter.

On August 4, 1976, defendants filed a notice of appeal from the July 23, 1976, order of the trial court denying the petition of defendants-appellants to dissolve the preliminary injunction, the July 26, 1976, order committing defendant Kaczmarek to jail for six months and the July 28, 1976, order denying the motion of defendants to dismiss plaintiff's complaint for lack of jurisdiction of the subject matter.

Defendants attempted to bring an appeal to this court from the trial court's denial of a motion to dissolve the preliminary injunctive order entered on February 19, 1976. An order denying defendants' motion to dissolve the injunction was entered in the trial court at 12:59 p.m. on March 30, 1976. Defendants' notice of appeal from this order was filed in the trial court on the same day, but several hours before the time of entry of the order appealed from. Upon consideration of plaintiffs' motion to dismiss in this court, defendants' appeal was dismissed on the basis that the notice of appeal was not timely filed within the requirements of the Supreme Court Rules because it was filed before the time of entry of the

order appealed from. (Ill. Rev. Stat. 1975, ch. 110A, par. 307; Ill. Rev. Stat. 1975, ch. 110A, par. 272.) This first appeal which was dismissed was brought by defendants as an interlocutory appeal from the order of the trial court refusing to dissolve an injunction under Supreme Court Rule 307(a)(1). Ill. Rev. Stat. 1975, ch. 110A, par. 307(a)(1).

Upon dismissal of defendants' first appeal, defendants filed a second appeal in this court from the order of March 30, 1976. Defendants represented this appeal to be an appeal from a final judgment of the circuit court under Rule 303 (Ill. Rev. Stat. 1975, ch. 110A, par. 303) and sought an extension of time to file a notice of appeal under Rule 303(e) (Ill. Rev. Stat. 1975, ch. 110A, par. 303(e)). Plaintiffs again filed a motion to dismiss the appeal. This court granted plaintiffs' motion stating that: "Defendants-appellants' case is properly characterized as an appeal from an interlocutory order of court refusing to dissolve an injunction, as such it is governed by Supreme Court Rule 307," and referring to the order of dismissal earlier entered.

The history of past proceedings in this case indicates that defendants have failed to perfect an appeal from the preliminary injunctive order entered by the trial court on February 19, 1976 and from the denial of their motion to dissolve the injunction entered on March 30, 1976.

On the present appeal defendants ask this court to examine the merits of the determination made by the trial court in entering the preliminary injunctive order of February 19, 1976. Plaintiffs claim that the doctrine of *res judicata* bars this court's consideration of the merits of the February 19 order. In support of this assertion plaintiffs cite, *inter alia, Schien v. City of Virden* (1955), 5 Ill. 2d 494, and *Field v. Field* (1967), 79 Ill. App. 2d 355.

In *Schien* the Illinois Supreme Court concluded that defendants' failure to appeal from the trial court denial of his motion to dissolve a temporary judgment had the effect of rendering that judgment a final judgment that the temporary injunction was properly issued. Upon the basis of the conclusion that the failure to appeal rendered the trial court determination the law of the case the supreme court went on to hold that there could be no entitlement to damages for the wrongful issuance of a temporary judgment, final determination having been made that the temporary injunction was not wrongfully issued.

■■ In *Field v. Field* the appellate court considered circumstances where plaintiff did not timely appeal from an order of injunction entered by the circuit court on November 17, 1965, but rather filed several motions alleging, *inter alia,* that an inappropriate forum had been availed of and that the court order of November 17, 1965, should be reversed. None of these orders was filed within the 30-day period provided by

Supreme Court Rules 303 and 307. The court quoted at length from 28 Am. Jur. *Injunctions* § 316 (1959) as follows:

> "Where the grounds and reasons for which the injunction was granted no longer exist, by reason of changed conditions, it may be necessary to alter the decree to adapt it to such changed conditions, or to set it aside altogether, as where there is a change in the controlling facts on which the injunction rests, or where the applicable law, common or statutory, has in the meantime been changed, modified, or extended. * * * On application to modify the decree, the inquiry is simply whether changes since its rendition are of sufficient importance to warrant such modification. However, the injunction, whether right or wrong, cannot on such a hearing be impeached in its application to the conditions that existed at its making."

After reviewing this quotation the court went on to note that no appeal was taken within 30 days after the injunctive decree of November 17, 1965. Given this fact the appropriate inquiry, the court stated, was whether or not plaintiff had, on appeal, demonstrated that there was a change in facts or circumstances since the time of the order granting the injunction which indicated that the trial court erred in refusing to dissolve the injunction as requested by plaintiff and denied by the trial court subsequent to the 30-day appeal period. The court concluded that the plaintiff had failed to establish that there had been a change in facts or circumstances since the time of the order granting the injunction, or that there had been a change in law. On this basis the court affirmed the decree of the circuit court denying plaintiff's petition to vacate the injunction and to transfer the case to the circuit court of Cook County.

■■ This court has itself noted, citing *Field v. Field*, that defendants' failure to appeal from a decree granting permanent injunction within the 30-day period following its entry will prevent the court from a review of the procedural and substantive aspects of the appeal. (*People v. Mulgrew* (1974), 19 Ill. App. 3d 327.) Noting that defendants' motion to vacate a decree filed some 90 days after the decree's entry was not based upon changed conditions of law or fact, and pointing out that an injunction was not subject to impeachment in its application to the conditions that existed at the time it was entered when not timely appealed, this court held that the injunction was *res judicata* as to issues raised by defendants' motion to vacate filed on the eve of contempt proceedings.

■■ The foregoing authorities are in accord with the general rule that a judgment is *res judicata* where an appeal has not been perfected. (46 Am. Jur. 2d *Judgments* § 461, at 630 (1969); 50 C.J.S. *Judgments* § 640, at 74 (1947); Annot., 9 A.L.R.2d 984, 1014 (1950).) In the case at hand the

injunctive order of February 19, 1976, and the order of March 30, 1976, denying defendants' motion to dissolve the injunction became the law of the case by appellants' failure to perfect an appeal.

At the hearing held on February 19, 1976, pursuant to plaintiffs' motion for a preliminary injunction, defendants argued, *inter alia*, that plaintiffs' complaint should be dismissed because the trial court had no jurisdiction of the subject matter of the dispute because the dispute was properly governed by the terms of the agreement of March 18, 1975, which the parties had entered into. At the hearing held on February 19, 1976, the trial court ruled against defendants with respect to all their motions. By this action and by entering the injunctive order of February 19, 1976, the trial court ruled adversely to defendants on the issue of subject matter jurisdiction. No written order was entered at that time specifically denying the motion of defendants respecting subject-matter jurisdiction.

■■ On July 18, 1976, upon motion of defendants' attorney, the trial court entered a written order which reads in pertinent part:

"On motion of Leonard Cuttone, attorney for the defendants, Shred Pax Corporation and Alvis Kaczmarek, the oral order made on February 19, 1976 is hereby entered as a formal written order of this court, as follows:

It is hereby ordered that the motion of said defendants to dismiss plaintiffs' complaint for lack of jurisdiction of the subject matter is hereby denied. * * *"

The present appeal is taken in part from this order. The appealability of interlocutory orders (in this instance appeal from the trial court's denial of defendants' motion to dismiss for lack of subject-matter jurisdiction) is governed by Supreme Court Rule 308. (Ill. Rev. Stat. 1975, ch. 110A, par. 308.) This rule provides an appeal only when the trial court has made a finding that "there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." In this case the requisite finding was not made. While defendants may raise their contention in a subsequent appeal on the merits, this court is at present without jurisdiction to consider the matter sought to be raised.

■■ Appropriate inquiry on this appeal pertains to the trial court's action in entering a judgment of contempt against defendants and in denying defendants' second motion to dissolve the injunction by its order of July 23, 1976. The focus of such inquiry as it pertains to disposition of the second motion to dissolve is upon whether appellants have established changed conditions of law or fact which indicate that the earlier injunctive order should be dissolved or modified. To the extent appellants' argument is directed at impeaching the injunction's application to conditions that existed at the time it was entered, such

argument will be disregarded. (*Field v. Field* (1967), 79 Ill. App. 2d, 355; *People v. Mulgrew* (1974), 19 Ill. App. 3d 327.) Only the proceedings respecting defendants' second motion to dissolve are before this court on appeal.

The trial court did not specify its reasons for denying defendants' second motion to dissolve the preliminary injunction in its order of July 23, 1976. Testimony pertinent to the issue of whether the motion to dissolve should be granted was presented by William Harry, an accountant employed by defendant Shred Pax on a part-time basis. He indicated that the assets of Shred Pax had increased from $800,832 on March 31, 1975, to $2,582,352 on March 31, 1976. According to his testimony Shred Pax showed a profit of $331,258 in 1976 as against a loss of $436,817 in 1975. While there was no stockholder's equity in 1975, in 1976 the corporate books showed a stockholder's equity of $451,574. William Harry testified that Shred Pax had at the time four employees. He indicated that the selling and general administrative expenses for Shred Pax amounted to nearly $1,200,000 in the fiscal year ending on March 31, 1976, or approximately $100,000 per month, further stating that the $6,000 per month authorized by the injunctive order was inadequate to permit the corporation's normal operation. While he acknowledged that the corporation had made a substantial turn around in the fiscal year ending March 31, 1976, he testified that Shred Pax was nonetheless unable to pay its debts as they became due in the usual course of its business. Richard Lucas testified that he was an attorney who had represented Shred Pax in certain actions brought by creditors against the corporation. He had negotiated numerous settlements for Shred Pax on a time-payment basis. He indicated that there were claims outstanding against Shred Pax, which he was involved with, in the approximate amount of $50,000.

It has been stated that: "The purpose of an interlocutory, preliminary or temporary injunction is quite clear. Such a decree is granted before a trial on the merits of a case for the purpose of preventing a threatened wrong, or any further perpetration of injury, in order to preserve the status quo with the least injury to the parties concerned. * * * It is not the purpose of such an injunction to determine any controverted rights nor to decide the merits of the case. * * *" (*Grillo v. Sidney Wanzer & Sons, Inc.* (1975), 26 Ill. App. 3d 1007, 1011. See also *Lonergan v. Crucible Steel Co. of America* (1967), 37 Ill. 2d 599, 611.) Trial court decisions in refusing to dissolve an injunction, as the trial court decisions in determining whether to grant or deny a temporary injunction, are reviewable only for abuse of discretion. *Cf. Lonergan;* and *Clark v. Village of Willow Springs* (1975), 30 Ill. App. 3d 1020 (abstract opinion).

■■ In looking to whether there was a showing of such change of circumstances as would justify the dissolving of the injunctive order of February 19, 1976, we note that the situation in July 1976 remained the

same as that in February 1976 to the extent that at both times defendant Shred Pax was "unable to pay its debts as they became due in the usual course of business." There was no showing made by defendants that the Klevay transaction did not, as found by the court in the February 19, 1976, injunctive order, "destroy" the value of plaintiffs' options under the March 25, 1975, agreement. Given these facts we find, in the main, that the trial court did not abuse its discretion in concluding that the preliminary injunction should not be dissolved. Defendants will have an opportunity to demonstrate the merits of their contention that the Klevay transactions improved the position of the corporation and did not impair the contractual and creditors' rights of plaintiffs at a subsequent trial of the merits.

Defendants have presented to this court, and the court has ordered taken with the case, an emergency motion asking that Shred Pax be relieved from the onus of the February 19 injunctive order to the extent that it be freed to pay certain creditors, particularly trade creditors, in order to carry on its business. Defendant Shred Pax represents that without such leave the corporation cannot continue to remain in business. It is argued that the February 19, 1976, order did not honor the legitimate needs of Shred Pax as an ongoing enterprise. We note that at the July hearing William Harry offered unrebutted testimony to the effect that the selling and general administrative expenses of defendant Shred Pax amount to nearly $100,000 per month. The February 19 injunctive order permitted the corporation only $6,000 per month to meet its operating expenses, including payment of salaries, indicating that defendants were enjoined "from receiving directly or indirectly any consideration of revenues from the sale, transfer or other alienation of property of defendant Shred Pax" and that such revenues were to be paid to Hawthorne Bank. At the hearing in this court on the emergency motion, counsel for defendant represented that sums of approximately $45,000 to $48,000 had been received by Hawthorne Bank pursuant to the February 19 injunctive order.

■■ In considering plaintiffs' request for a preliminary injunction the trial court was required to consider whether, as alleged by plaintiffs, the Klevay transaction endangered the status quo by impairment of plaintiffs' contractual rights and creditors' rights. The order of February 19, 1976, and the trial court's action taken on July 23, 1976, in refusing to dissolve the earlier injunctive order in effect determined that the Klevay transaction (represented by plaintiffs to be a sellout of defendant Shred Pax' business) must be enjoined in order to preserve the status quo. In restraining the Klevay transaction, however, the trial court was not authorized to so impair the ongoing business of defendant Shred Pax as to render the corporation inoperable. Our review of the record indicates a

likelihood that the award of $6,000 a month operating expenses to defendant Shred Pax was inadequate to sustain the ongoing operation of that corporation. The unrebutted testimony of William Harry at the July hearings on defendants' motion to dissolve the injunction indicated that the corporation's need for operating expenses was considerably in excess of the $6,000 per month awarded by the court and that $6,000 per month would not permit the corporation to carry on its normal operation. This testimony brought to the attention of the court the fact that an unintended consequence of the February 19, 1976, decree may have been corporate strangulation. In our view it was adequately demonstrated that the injunction should be modified. We vacate the February 19, 1976, injunction order to the extent that it authorizes Hawthorne Bank to release $6,000 per month to the corporation for operating expenses. Given the fact that new obligations of defendant Shred Pax may have been incurred since the time of our hearing of the emergency motion and given the fact that this court is not equipped to hear evidence, we remand to the trial court for a prompt and realistic determination of the need for operating expenses of defendant Shred Pax which will balance the needs of that corporation as an ongoing entity and the rights of corporate creditors and will remedy insofar as possible the unwarranted imbalance, if any, created by the February 19, 1976, decree.

At the hearings of July 21 and 22, 1976, pursuant to plaintiffs' petition for rule to show cause why defendant should not be held in contempt of the February 19, 1976, injunctive order, Samuel Book and defendant Kaczmarek gave testimony pertinent to the issue of contempt. Samuel Book, an assistant vice-president of the Itasca State Bank, testified that on the 25th day of February 1976 he was asked to go to the premises of Shred Pax Corporation by Roger Spreen, the treasurer of Kleco Corporation (Walter Klevay's company). While at the Shred Pax premises Mr. Book had no conversation with defendant Kaczmarek but understood that Kaczmarek knew that he (Samuel Book) was at the premises to receive checks from Roger Spreen of Kleco. Samuel Book further testified that defendant Kaczmarek knew what was being done with the money which was exchanging hands. He indicated that after transference of some $240,000 a portion of the funds received by Itasca Bank were applied to some $60,000 of overdrafts of Shred Pax Corporation which the Itasca State Bank had honored.

Defendant Kaczmarek testified that he did not wilfully and openly defy the court injunctive order in permitting the transaction (at which some $240,000 was paid by Kleco to the Itasca State Bank to release the inventory of Shred Pax in order that the Klevay transaction might go forward) to be completed. He indicated that the injunction of February 19, 1976, was designed to bankrupt Shred Pax and him personally and left

him no recourse but to go through with the deal with Klevay, indicating that in order for Kleco to carry out its operations as anticipated by the license agreement which had earlier been signed, it was necessary that the Shred Pax inventory be transferred to Kleco.

Defendants argue that the contempt judgment against defendant Kaczmarek and defendant Shred Pax was improperly entered because: (1) the actions of defendants did not violate the proscriptions of the February 19, 1976, order of the court; (2) no injury to plaintiffs has been shown such as would justify a finding of contempt; (3) the court should not impose punishment for contempt when it is impossible for the contemnors to perform the condition for discharge of such contempt; (4) the conduct of the court was demeaning and prejudicial to defendants; and (5) the court had no jurisdiction because the petition for rule to show cause of plaintiffs was not verified.

■■ In their petition for rule to show cause plaintiffs allege that the events of February 25, 1976, which occurred at the Shred Pax Corporation premises with full knowledge of defendants, were contumacious in that defendants failed to have consideration in the amount of some $243,000 paid to the Hawthorne Bank and rather permitted and authorized the same to be paid to an officer of Itasca State Bank for credit to the account of defendant Shred Pax Corporation. Defendants' theory of the case below was one of justification, not one of denial that the alleged acts were contumacious. In their sworn answer to plaintiffs' petition defendants admitted the allegations of plaintiffs' petition respecting the alleged contumacious acts. In the court below defendants' counsel admitted that his clients had violated the injunctive order of February 19, 1976. Defendants' defense in the trial court was that they had no wilful intent to violate the injunctive order. Now on appeal defendants contend that the actions which defendants engaged in on February 25, 1976, did not result in a violation of the February 19, 1976, injunctive order because the actions resulted merely in a substitution of creditors and in fact involved no transfer of the property of defendant Shred Pax Corporation. This contention is raised for the first time on appeal and is thus not timely raised. *Shaw v. Lorenz* (1969), 42 Ill. 2d 246; and *Flatow v. Amalgamated Trust & Savings Bank* (1968), 97 Ill. App. 2d 357, 361.

Defendants next contend that a contempt judgment was erroneously entered because there was no showing that the alleged contumacious acts of February 25, 1976, caused plaintiffs any injury. In support of the assertion that a showing of injury is required in justification of a contempt judgment, defendants cite *People v. Diedrich* (1892), 141 Ill. 665, and *Rothschild & Co. v. Boston Store* (1920), 219 Ill. App. 419. In *Diedrich* an injunctive order entered restraining defendant from manufacturing,

selling or advertising certain furnaces. Plaintiffs sought to have defendant punished for contempt of the order of the court. The lower court found defendant in contempt. In its decision the supreme court approved the appellate court order reversing the contempt on the basis that there was not sufficient proof of interest in and injury to plaintiffs as would justify the contempt judgment. In so concluding, the court noted that there was no showing by complainants that defendant did any acts complained of in a territory other than that in which defendant, by agreement with complainants, had the exclusive right to manufacture and sell the furnaces in question. In essence the court concluded that the acts complained of were outside the scope of the injunction in that case and noted, in support of their conclusion, that no showing of injury had been made by complainants.

Plaintiffs cite *Loven v. People ex rel. Dr. Peter Fahrney & Sons, Inc.* (1895), 158 Ill. 159, for the proposition that injury as a result of alleged contumacious acts will be inferred where violation of an injunctive order of the court is shown. In *Loven* an injunctive decree was entered by the lower court enjoining defendant from advertising certain medicines or representing himself to be, in any respect, in the employ of complainant. It was next contended that defendant had violated the terms of the injunction and contempt proceedings were brought. The supreme court observed that by defendant's own admission he was guilty of violation of the injunctive order. Defendant, however, contended that the court could not punish him because it was not shown that complainant had suffered injury by reason of the alleged contumacious acts. Defendant cited to the court the decision in *People v. Diedrich* (1892), 141 Ill. 665. The supreme court distinguished *Diedrich* noting that that case was one in which complainant had no interest in the property affected by the acts sought to be charged as contempt or had parted with his interest in the subject of the litigation. The court noted as the controlling rule that injury and legal damage will be inferred from violation of an injunctive order where the interests which were in litigation in the principal suit are involved.

■■ It has been generally stated that the *only* issue involved in contempt proceedings alleging violation of an injunction is whether the injunction has been violated. (*People ex rel. Emmerson v. Lee* (1924), 311 Ill. 552; *East Side Health District v. Village of Caseyville* (1963), 38 Ill. App. 2d 438, 444.) Consistent with this principle it has been noted that the question of whether an injunction was erroneously granted cannot be considered in contempt proceedings. (*Cummings-Landau Laundry Machinery Co. v. Koplin* (1944), 386 Ill. 368.) In *Nusbaum v. Retail Clerks' International Protective Association* (1922), 227 Ill. App. 206, contempt proceedings were brought against members of the labor union alleging their violation of an injunction against picketing and boycotting

complainant's store. The court concluded that the question of injury was not properly before the court because contempt proceedings were collateral proceedings and the fact of injury would be inferred from the violation of the injunction.

■■ ■ The question of injury is generally considered and conclusively resolved at the time an initial order of injunction is entered. Defendants did not move to dismiss the initial order of injunction prior to their alleged contumacious acts of February 25, 1976. As we have earlier pointed out, defendants did not timely raise the issue that the alleged contumacious acts were not within the scope of the February 19, 1976, injunctive order. We conclude that the rule of *Diedrich* must be regarded an exception to the general rule that injury will be inferred from the violation of an injunctive order. We find the present facts distinguishable from those of *Diedrich* and *Rothschild & Co. v. Boston Store* in that timely issue in this case has not been raised that the alleged contumacious acts were outside the scope of the February 19, 1976, injunctive order. Defendants' contention fails.

■■ Defendants argue that the lower court did not properly impose punishment for contempt in sentencing defendants to six months imprisonment subject to the payment of some $240,000 to the Hawthorne Bank because it was impossible for defendants to perform the condition for discharge of their sentence. It has been stated that:

> "Imprisoning a party for refusing to pay money to another does not solely aim to punish the contemnor but also to obtain for the other party such sums as are due and owing. (*People ex rel. Meier v. Lew*, 380 Ill. 531, 44 N.E.2d 551.) A proper order therefore should provide the contemnor's key to his cell. It follows that defendant's imprisonment here for a definite time is improper. The order should have provided the amount defendant was required to pay according to his ability to meet the payments, and to provide terms upon which the balance should be paid, so that by satisfying the order defendant could purge himself of the contempt and be discharged from jail. (*White v. Adolph*, 305 Ill. App. 76, 26 N.E.2d 993; *Todd v. Arbuckle*, 1 Ill. App. 3d 32, 272 N.E.2d 257; *LaRue v. LaRue*, 341 Ill. App. 411, 93 N.E.2d 823.)" *Sullivan v. Sullivan* (1973), 16 Ill. App. 3d 549, 552.

Defendants correctly note that were it impossible for them to perform the condition of their discharge the sentence imposed by the trial court would be improper. However, as pointed out by plaintiffs both on appeal and before the trial court, defendants have not introduced evidence indicating that in fact compliance with the condition of their discharge is impossible. We do not have before us a record which indicates that it is in fact impossible for defendants to procure compliance with the condition of

their sentence for contempt. We cannot, therefore, agree with defendants that the sentence imposed in the trial court is unlawful. If compliance with the condition for discharge imposed by the trial court is in fact impossible, defendants should make application to the trial court for reduction of sentence and introduce in that court proof of the impossibility. If impossibility is shown the trial court should vacate the sentence imposed and resentence defendants in accordance with the standards governing sentence for civil contempt. See *Sullivan v. Sullivan*, as quoted above.

■■ Defendant argues that the trial court became personally involved in these proceedings and that its conduct was demeaning and prejudicial to defendants. The proceedings before the trial court in this case were exceedingly long and the issues were defined for the court with anything but clarity. It is apparent that the trial court at times evidenced impatience given the nature of the proceedings before it. In our view, however, the responses of the trial court were a reflection of the lack of clarity with which the proofs in this case were presented at the trial level and do not indicate that defendants did not receive an impartial hearing before that court. To the extent defendants' contention may be viewed as raising the issue that the trial court improperly perceived the contempt proceedings against defendants as criminal contempt proceedings, we point out that, upon a showing of impossibility of performance of the condition for discharge, defendants would be entitled to resentence as indicated above.

■■ Defendants next argue that the trial court had no jurisdiction of the subject matter with respect to the contempt proceedings because plaintiffs' petition for rule to show cause was not properly verified. Defendants do not contend that they were not accorded the requisites of due process, that is, that they were not provided notice and an opportunity to answer and be heard with respect to the charges in plaintiffs' petition. In an absence of a violation of due process rights, failure to verify a petition is not essential. *People v. Spounias* (1959), 20 Ill. App. 2d 184.

For reasons given the judgment of the circuit court of Du Page County is affirmed in part and reversed in part and remanded with directions to that court to hold a hearing for purposes of determining reasonable operating expenses to be allowed Shred Pax Corporation pursuant to the injunctive order of February 19, 1976.

Affirmed in part and reversed in part and remanded with directions.

GUILD, P. J., and RECHENMACHER, J., concur.