TALBERT & MALLON, P.C., Plaintiff-Appellant, v. JON G. CARLSON *et al.*, Defendants-Appellees (Jon G. Carlson, Counterplaintiff-Appellee; Hugh Talbert, d/b/a Talbert & Mallon, P.C., Counterdefendant-Appellant).

Fifth District   No. 5—87—0474

Opinion filed May 24, 1988.

Morris B. Chapman, of Granite City, and John W. Leskera, of East St. Louis, for appellant.

Robert G. Heckenkamp and David L. Drake, both of Heckenkamp, Simhauser & Drake, P.C., of Springfield, for appellees Jon G. Carlson and Philip B. Alfeld.

JUSTICE WEBER delivered the opinion of the court:

This is an appeal brought pursuant to Supreme Court Rule 307(a)(1) (107 Ill. 2d R. 307(a)(1)) seeking review of an interlocutory order of the trial court ordering both the plaintiff, Talbert & Mallon, P.C., and defendants, Jon G. Carlson and Philip B. Alfeld, to take certain affirmative actions relative to attorney fee lien claims each had previously asserted in cases handled by the other. The claims involve fees in cases the parties handled during their prior association in the practice of law.

The salient facts of this case commence with the association of Hugh M. Talbert, Lance R. Mallon, and Jon G. Carlson in the practice of law in December 1984 under the firm name of Talbert, Carlson & Mallon, P.C. Prior to such association, Hugh M. Talbert and Lance R. Mallon had been associated in the practice of law under the firm name of Talbert & Mallon, P.C. The association of Talbert, Carlson & Mallon, P.C., ended in June 1986 when Jon G. Carlson withdrew from the firm. Philip B. Alfeld, an employee of Talbert, Carlson & Mallon, P.C., also terminated his association with the firm in June 1986. Hugh M. Talbert and Lance R. Mallon retained their association under the firm name of Talbert & Mallon, P.C., the plaintiff herein. Jon G. Carlson and Philip B. Alfeld thereafter associated in the practice of law under the firm name of Carlson & Alfeld. At the time of disassociation, plaintiff and Carlson mutually agreed as to a division of the firm's files. No arrangement as to a division of fees on these files had previously been reached, nor was there an agreement as to division of fees at the time files were divided.

On August 22, 1986, plaintiff filed suit against defendants Carlson, Alfeld, and Peery seeking actual and punitive damages for alleged wilful and intentional breach of duties owed to plaintiff as a result of the prior association of the plaintiff and defendants. (Defendant Richard J. "Jack" Peery is alleged in the suit to be a former investigator of Talbert, Carlson & Mallon, P.C., but is not personally involved in the issues of this interlocutory appeal.) On the same date, Carlson & Alfeld filed a separate action against Talbert & Mallon, P.C., seeking an order of the trial court enjoining Talbert & Mallon, P.C., from asserting attorney liens on cases being handled by Carlson & Alfeld and declaring such liens invalid and ordering Talbert & Mallon, P.C., to fully release such liens previously filed. The above two suits, one a legal action and the other an equity action, were never formally consolidated. For purposes of this appeal, the two suits will be considered to have been consolidated inasmuch as the bulk of the pleadings filed in the two cases contain both case numbers and hearings were conducted simultaneously in the two cases.

An evidentiary hearing was conducted on September 5, 1986, relative to the injunctive relief sought in the case. The trial court found that the plaintiff could properly assert attorney liens and, therefore, denied the request of defendants Carlson & Alfeld to enjoin plaintiff from filing attorney liens. The trial court further ruled that with respect to two specific cases, known respectively, as the *Barnett* and *McMorris* cases, the attorney fees in those two cases should be paid to the Edwardsville National Bank as an escrow holder to be later distributed only by order of the trial court.

Thereafter, on November 6, 1986, plaintiff filed a petition for rule to show cause against Carlson seeking to have Carlson found in contempt of court for allegedly misrepresenting the order of September 5, 1986. Plaintiff alleged in the petition that Carlson had sent letters to defendants in certain cases handled by plaintiff stating that Carlson claimed a lien in the attorney fees in the cases and that the order of September 5, 1986, required the fee proceeds of the plaintiff to be escrowed at the Edwardsville National Bank pending resolution of the dispute between plaintiff and Carlson. Plaintiff contended that the order of September 5, 1986, required that only the fee proceeds from the *Barnett* and *McMorris* cases be escrowed. Carlson filed a response contending that "a fair reading" of the order contemplates that fees in dispute between the parties in pending matters be handled in the same manner as the *Barnett* and *McMorris* fees until the respective determination of the interests in said fees be made by the trial court.

On December 22, 1986, plaintiff filed a motion for temporary injunction seeking an order of the trial court enjoining all defendants from asserting claims and interests in fees in which they had no contractual claim, ordering them to withdraw all such claims, enjoining them from claiming the order of September 5, 1986, required a deposit of any such fees in an escrow account, and ordering them to instruct all those to whom such claims were asserted that they have no interest in the fees by reason of said order of September 5, 1986. The trial court heard arguments on December 30, 1986, on, *inter alia*, the petition for rule to show cause and the motion for temporary injunction. No evidence in addition to that presented on September 5, 1986, was offered. The trial judge, being a different judge than the one who entered the order of September 5, 1986, removed the report of proceedings of September 5, 1986, from the file for review and continued the cause for additional argument. Defendants Carlson and Alfeld filed an answer to motion for temporary injunction and counterclaim for temporary judgment on January 16, 1987. In this counterclaim, defendants Carlson and Alfeld sought relief against plaintiff similar in nature to that sought by plaintiff against defendants through the motion for temporary injunction filed December 22, 1986. Additional arguments relative to the temporary relief requested by both parties were presented on May 29, 1987.

At the conclusion of the hearing on May 29, 1987, the trial court made pronouncements from the bench which are contained in a written order entered on June 11, 1987. It is this order which is the subject of this appeal. The order in essence commanded (1) each party to direct letters to the defendants and their insurance carriers in various case files being handled by and in possession of the other party and to whom lien letters had been sent indicating that the party to whom such letters were sent pay attorney fees directly to the attorney handling and in possession of the file without naming the attorney who was not handling and in possession of the file as an additional payee; (2) each party serve on the other party within 30 days of each settlement in such pending case files a statement of the settlement; and (3) each party to resolve in the instant cause all attorney fee disputes and claims, enjoining each party from filing separate lawsuits against the defendants and their insurance carriers in the various case files to resolve such fee disputes. The trial court reserved ruling on division of fees between plaintiff and defendants.

Plaintiff contends that the order of September 5, 1986, finding plaintiff had sufficient interest to assert an attorney lien in cases which arose while Carlson was associated with the firm of Talbert,

Carlson & Mallon, P.C., not having been appealed within the scope of Supreme Court Rule 307(a) (107 Ill. 2d R. 307(a)), became the law of the case and, under the doctrine of *res judicata*, barred the entry of a subsequent order enjoining plaintiff from filing and perfecting attorney fee liens. Reliance is placed by the plaintiff on *Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.* (1983), 94 Ill. 2d 535, 447 N.E.2d 288, and *Debowski v. Shred Pax Corp.* (1977), 45 Ill. App. 3d 891, 359 N.E.2d 204. We find plaintiff's reliance on the above-cited authorities misplaced.

In *Stocker Hinge*, an appeal was taken from an award of damages for wrongful issuance of a temporary restraining order (TRO). No appeal had been taken from an order denying defendant's motion to dissolve the TRO. In reversing the award of damages for wrongful issuance, our supreme court declared that a failure to appeal from an order denying a motion to dissolve a TRO had the net effect of establishing for that case that the TRO had been properly granted. A similar result was stated in *Debowski*, where the failure to timely appeal denial of a motion to dissolve a temporary injunction had the effect of rendering that judgment a final adjudication that the temporary injunction was properly issued. (*Schien v. City of Virden* (1955), 5 Ill. 2d 494, 126 N.E.2d 201; *Field v. Field* (1967), 79 Ill. App. 2d 355, 223 N.E.2d 551.) Whether the order of September 5, 1986, was properly issued is not an issue in this appeal. The issue in this appeal is whether the order of June 11, 1987, was properly issued notwithstanding the order of September 5, 1986.

■ An order entered by the trial court granting or denying equitable relief is changeable at any time on a change of circumstances. (*Field v. Field*, 79 Ill. App. 2d at 359, 223 N.E.2d at 553.) "The power to modify is essential, for without it an injunction awarded by a court of equity might itself become an instrument of inequity." (*Material Service Corp. v. Hollingsworth* (1953), 415 Ill. 284, 288, 112 N.E.2d 703, 705.) While the instant cause does not involve a modification of a prior injunctive order, it does involve the issuance of a temporary injunction barring the asserting of attorney liens after a prior request to do so had been denied.

■ The trial court properly exercised its discretion in entering the order of June 11, 1987. At the time the order was entered, both the plaintiff and defendants had pleadings before the trial court seeking injunctive relief. Plaintiff's pleading filed on December 22, 1986, sought mandatory relief against defendants Carlson and Alfeld, specifically, an order compelling said defendants to withdraw their lien claims and notify those previously noticed of the claims that they no

longer assert an interest in the fees. Defendants' pleading filed on January 16, 1987, sought relief against plaintiff similar to that sought by plaintiff against defendants.

The trial court considered the testimony presented during the September 5, 1986, evidentiary hearing, the only evidentiary hearing held on the issue of injunctive relief. The testimony revealed that pursuant to an agreement Carlson took about 75 or 80 files at the time he departed the firm, leaving approximately 180 or 190 files with the firm. Subsequent to September 5, 1986, many of these files were being settled, giving rise to additional litigation over the attorney lien claims. It is clear from the record that the trial court took notice of the proliferation of lawsuits filed in the circuit court as a result of these claims and considered the effect these lawsuits were having on the settlement and/or termination of the files that generated the legal fees in dispute. Additionally, the trial court heard extensive legal arguments from both parties on December 30, 1986, and May 29, 1987, on the propriety of each party's application for injunctive relief. Each party espoused some form of a mandatory injunction. The trial court faced an unenviable task of not only presiding over the dispute between the parties in this action but potentially of presiding over lien disputes in approximately 250 cases and assuring the many litigants in those cases that such lien disputes would be resolved expeditiously to allow timely settlement of the underlying actions.

A trial court is free to exercise its discretion in the granting or denying of injunctive relief, and its rulings will not be reversed unless there is an abuse of the exercise of such discretion. (*Toushin v. City of Chicago* (1974), 23 Ill. App. 3d 797, 320 N.E.2d 202; *Gentile v. Wilkins* (1972), 8 Ill. App. 3d 413, 290 N.E.2d 672.) We find no such abuse in the instant action and believe the trial court's exercise of discretion in the entry of the order of June 11, 1987, was sound.

Each party demonstrated its potential claim in the various attorney fees. Failure to timely complete settlement of the various case files of the former firm was shown to cause damage not only to the parties of this action but to the litigants in the various case files. This damage was of uncertain magnitude. Furthermore, we believe that the determination of the fee split between the parties in over 250 separate lawsuits was not an adequate remedy at law when the same determination could be accomplished in a single action.

> "For there to be an adequate remedy at law which will deprive equity of its power to grant injunctive relief, the remedy 'must be clear, complete, and as practical and efficient to the ends of justice and its prompt administration as the equitable remedy.'

(*K.F.K. Corp. v. American Continental Homes, Inc.* (1975), 31 Ill. App. 3d 1017, 1021[, 335 N.E.2d 156, 159].)" (*Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 549, 370 N.E.2d 223, 227.)

Consequently, we find that a threat of irreparable harm and the lack of an adequate remedy at law was shown.

■■ ■ Status quo, which is to be preserved in a preliminary order, has been defined as the last actual, peaceable, uncontested status which preceded the pending lawsuit. (*Summit Electric Co. v. Mayrent* (1974), 17 Ill. App. 3d 545, 308 N.E.2d 313.) The trial court stated in its pronouncements from the bench on May 29, 1987, that "there ought to be some way that you gentlemen can go ahead with the practice of law." We perceive the last actual, peaceable, uncontested status between these parties to be that point in time when each party was free to try and settle cases without the hindrance of an attorney lien claim of the other party. We find that the order of June 11, 1987, preserved the status quo.

■■ ■ The order of June 11, 1987, was not inconsistent with the trial court's finding of September 5, 1986, that plaintiff could properly assert attorney liens in the files of the former firm. While the order of June 11, 1987, effectively precluded the parties from asserting attorney lien claims in those files, the order did not decree that such claims could not exist or were invalid. Trial courts have the power to enter orders restraining litigants from instituting or proceeding with related actions in appropriate situations. Determination was made by the trial court that the respective claims and interests of both the plaintiff and defendants in the various attorney fees could be protected and more appropriately determined in the instant action as opposed to in over 250 separate lien foreclosure actions. Preserving and protecting the parties' interest in the subject attorney fees, doing justice in the various case files of the former law firm by permitting the litigants to timely conclude their cases, and accomplishing judicial economy support the trial court's sound use of discretion in entering the order of June 11, 1987.

■■■ While a lien statute is unquestionably intended to preserve specific property in the hands of the debtor until the respective claims of the parties can be resolved, the trial court sought to preserve these protections to the parties in this action despite its bar of the parties to perfect their lien claims. The dispute over fees is not between the debtor and the attorneys, but rather between the attorneys as to their respective shares. Considering the large number of cases in the possession of both the plaintiff and defendants yet to be resolved, the

trial court determined that neither party need post a bond or give additional security at this time. The issue of a bond or additional security was left open for later determination. Essentially, each party was granted leave to seek bond or additional security should the circumstances change to merit it. This, coupled with the requirement that each party provide the other party a copy of each settlement within 30 days of the settlement, reveals that the trial court was cognizant of the issue and did not abuse its discretion in refusing to order either party to post a bond in its order of June 11, 1987. (*Lums Restaurant Corp. v. Bloomington Restaurant Investments, Inc.* (1981), 92 Ill. App. 3d 1143, 416 N.E.2d 751.) Even if the trial court had erroneously failed to require the posting of a bond or security, the injunctive order would not be void. *Bonner v. Westbound Records, Inc.* (1977), 49 Ill. App. 3d 543, 364 N.E.2d 570.

In conclusion, we find that the trial court properly exercised its discretion in entering the order of June 11, 1987, in this cause.

Accordingly, said order is affirmed.

Affirmed.

LEWIS and LEWIS, JJ., concur.